258 So.2d 872

**AMERICAN LIBERTY INSURANCE COM-PANY, a Corporation**

v.

Eldora Marie SOULES et al.

6 Div. 866.

Supreme Court of Alabama.

March 2, 1972.

Dunn, Porterfield, McDowell & Scholl, Birmingham, for appellant.

Rives, Peterson, Pettus, Conway & Burge and Edgar M. Elliott, III, Birmingham, for appellee State Farm Mutual Auto. Ins. Co.

Clifford Emond, Jr., Birmingham, for appellee Eldora Marie Soules.

F. Raymond Ingram, Birmingham, for appellee Dennis Lee Heth.

HARWOOD, Justice.

Dennis Lee Heth and Eldora Marie Soules were engaged at the time of an occurrence which generated the litigation out of which this appeal arises.

Heth was a deputy sheriff and habitually carried a pistol. On 29 July 1967, he and Miss Soules had been to an apartment of friends where a party was in progress. They left this apartment and drove to the Ryder Truck Lines, and later returned and parked in front of the apartment building. Miss Soules did not want to return to the party as she did not know any of the people there. Heth wanted to return to the party. They sat in Heth's automobile for about fifteen minutes discussing whether they would or would not return to the party, and their prospects of marriage. Heth had placed his pistol behind himself pushed down between the seat and the back of the seat. He testified that the pistol became uncomfortable to him and he was in the act of moving the pistol to another place when it fired. The bullet entered Miss Soules' neck and inflicted a rather severe wound. He could not say why the pistol fired.

Miss Soules' testimony did not vary substantially from Heth's, other than she testified she heard the automobile door open and close, and when she looked around she saw the barrel of the pistol pointing at her. Heth could not say whether he had

opened and closed the door during the changing of the location of the pistol.

Heth, after the shooting, immediately drove Miss Soules to a hospital. On the way he had a collision with another automobile. Miss Soules sustained some minor injuries in this collision. Heth reported these two incidents to the sheriff's department of Jefferson County.

Heth had a policy with State Farm Mutual Insurance Company providing casualty coverage on his automobile. A day or two after the occurrences he reported both the shooting accident and the collision to State Farm. State Farm had Heth come to their office. He was accompanied by his father. There he gave a statement to a State Farm representative both as to the wounding of Miss Soules and as to the collision. Later, on 29 July 1967, Heth signed a document authorizing State Farm to "investigate, negotiate, settle, deny, or defend any claim arising out of an accident or occurrence on or about 29 July 1967."

On May 20, 1968, Mr. Clifford Emond, Jr., an attorney, wrote a letter to Mr. Heth stating that he represented Miss Soules in reference to her claim for damages against Heth as a result of the gunshot wound inflicted on her by Heth on 29 July 1967.

Heth and his father promptly consulted with Mr. Raymond Ingram, an attorney. After examining all the insurance policies owned by the Heths, which included a homeowner's insurance policy issued to Heth's parents, a letter was written by Mr. Ingram to American Liberty Life Insurance Company, the insurer under the homeowner's policy notifying that company of the claim by Miss Soules, and offering to cooperate fully with the company. This letter was received by American Liberty on 11 June 1968.

Dennis Lee Heth testified that until the consultation with Mr. Ingram he did not know that his parents had a homeowner's policy, although he was aware that they had "all kinds of insurance."

Mr. Heth's father testified that when the letter was received from Mr. Emond, "we discussed it over and at that time, we thought my family had policies with State Farm and I thought they were handling the case. When the letter came, we were surprised State Farm wasn't handling it."

Mr. Heth's mother also testified that prior to the consultation with Mr. Ingram, she was not aware that she had a policy that would cover her son in the shooting incident.

American Liberty denied liability on the homeowner's policy.

A suit being filed by Miss Soules against Heth, American Liberty brought a declaratory proceeding in the Circuit Court of Jefferson County seeking to have the court declare, (1) that American Liberty homeowner's policy afforded no coverage to Heth as to the occurrence made the basis of the civil suit in that liability under the American Liberty policy specifically excluded coverage for the occurrence, (2) that the automobile insurance policy issued by State Farm Mutual Automobile Insurance Company, in force at the time of the occurrence afforded coverage to Heth, and (3) that Heth had breached the terms of the policy issued by American Liberty by failing to give notice to American Liberty as soon as practicable as required under the terms of said policy.

After hearing the Chancellor decreed, (1) that the American Liberty policy afforded coverage to Heth for the occurrence made the basis of Miss Soules' claim for damages, and for the suit filed by Miss Soules, and (2) that the policy issued by State Farm afforded no coverage to Heth for the occurrence which was the basis for Miss Soules' civil suit.

The court did, however, enjoin the prosecution of Miss Soules' civil suit pending this appeal.

American Liberty's homeowner's policy contains the following provisions:

"*Insuring Agreements*, (1, e) agrees to pay on behalf of the insured all sums

which the insured shall become legally obligated to pay as damages because of bodily injury or property damage and the Company shall defend any suit against the insured alleging such bodily injury * * *"

Under the "*Special Exclusions*" clause in the American Liberty policy it is provided that the policy does not apply

"* * * (b) to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles * * * while away from the premises." The policy defines an "insured" as follows:

"2. *Definitions (a) Insured*: The unqualified word 'insured' includes (1) the Named Insured and (2) if residents of his household, his spouse, the relatives of either, * * *"

In the homeowner's policy Floyd R. Heth and Minnie Lee Heth were the named insureds. Dennis Lee Heth was their son and had lived in their household his entire life. There can be no doubt that under the terms of the homeowner's policy Dennis Lee Heth was an additional insured under the policy.

The provision in the State Farm automobile liability policy issued to Dennis Lee Heth, pertinent to the point now being considered, afforded coverage for legal liability, as follows:

"* * * Because of (a) bodily injury sustained by other persons * * * caused by accident arising out of the ownership, maintenance, or use * * * of the owned automobile."

Assignment of error No. 3 asserts that the trial court erred as a matter of law in ruling that the policy issued by State Farm afforded no coverage to Dennis Lee Heth.

The thrust of the appellant's argument in support of assignment of error No. 3 may be summarized in the following quotation from appellant's brief:

"The shooting occurred when Heth was moving the pistol because it was bothering him. He was, thus, using the automobile as a storage recepticle for his revolver and at the time of the shooting both Heth and Soules were using the parked vehicle as a place to discuss their problems."

From this premise counsel for appellant concludes that insurance coverage for Miss Soules' claim should be placed upon State Farm, contending that the accident arose out of the use of Heth's automobile.

In Alabama Pipe Co. v. Wofford, 253 Ala. 610, 46 So.2d 404, a workmen's compensation case, this court stated that the phrase "arising out of employment" denotes "employment as the source and cause of accident and we have said in order to satisfy this requisite the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment and not otherwise."

Paraphrasing the above exposition of the meaning of "arising out of" to the phrase as used in the State Farm policy, the phrase would denote the use of the insured's automobile as the cause of the accident, and in order to satisfy this requisite the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the use of the automobile and not otherwise.

This cannot be reasonably done. There must be a causal connection between the accident arising out of the use of the automobile before coverage can be successfully invoked. While Heth and Miss Soules were sitting in the automobile at the time the pistol went off, there is nothing from which an inference can be drawn connecting the automobile with the firing of the pistol. The injury was not one arising from, or connected with the inherent use of the automobile as a vehicle. The automobile was merely the situs of the accident which could as well have occurred in any other location.

. Counsel for appellee, State Farm, have stated in brief that their research has revealed only four cases from jurisdictions outside Alabama relative to whether the discharge of a firearm within an automobile, causing injury to an occupant of the automobile, can constitute an injury arising out of the use of the automobile within the coverage of an automobile liability policy. Our research likewise has not brought to light any cases additional to those cited by counsel for State Farm. These cases are National Union Fire Ins. Co. v. Bruecks, 179 Neb. 642, 139 N.W.2d 821; Mason v. Celina Mutual Ins. Co., 161 Colo. 442, 423 P.2d 24; Brenner v. Aetna Ins. Co., 8 Ariz.App. 272, 445 P.2d 474, and United States Fidelity & Guaranty Co. v. Western Fire Ins. Co. (Ct. of App. of Kentucky), 450 S.W.2d 491.

The doctrines of all of the above mentioned cases are in accord that such circumstances and facts (i. e., occupant of an automobile injured by discharge of a firearm by another occupant), do not constitute an injury arising out of the use of the insured automobile, for the reason that there is no causal relation between the use of the automobile and the injury. We are in accord with the conclusions reached in these four cases.

Counsel for appellant relies heavily upon Baudin v. Traders and General Ins. Co. (La.App.), 201 So.2d 379; Cagle v. Playland Amusement Inc. (La.App.), 202 So.2d 396, and Merchants Co. v. Hartford Accident & Indemnity Co., 187 Miss. 301, 188 So. 571.

In Brenner v. Aetna Ins. Co., supra, the Court of Appeals of Arizona observed:

"There are cases, too, which stretch far to find the requisite causal connection."

In this category we would place the two Louisiana cases, and perhaps the Mississippi case cited above and relied on by the appellant.

In *Cagle*, supra, the owner of an insured automobile had left the keys in his automobile with the doors locked at an amusement beach. A beach guard used his pistol to break a window in the automobile. The pistol fired and the plaintiff was injured. Answering interrogatories, the jury found that the guard was negligent in breaking the window, and also answered affirmatively that the guard with the owner's permission was using the automobile and thereby became an additional insured. Judgment was for the plaintiff, and the Louisiana Court of Appeals affirmed, holding that the injury was one arising out of the use of the automobile, and that the owner's insurer was liable under its policy. We do not find this case persuasive.

In *Baudin*, supra, the plaintiff was also owner of the insured automobile. He had loaned the automobile to his brother-in-law, who while driving in the plaintiff's neighborhood saw the plaintiff's three year old child playing in a yard across the street from the plaintiff's and the child's home. The brother-in-law stopped the automobile and told the child to go back to his home. The child refused to do so and walked away, and resumed playing with other children. At this time a young lady left the steps of the house, walked to the automobile and she and the brother-in-law engaged in conversation. About five minutes later the child, unnoticed by the brother-in-law, or his lady friend, started across the street and was struck by an automobile. The plaintiff-father filed suit against his brother-in-law and his insurance carrier in solido, the brother-in-law being an additional insured under the plaintiff's automobile liability policy. The lower court dismissed the suit, but on appeal the Louisiana Court of Appeals held that the brother-in-law's action in parking the automobile and remaining seated therein constituted a "use" of the automobile within the terms of the policy and reversed the judgment dismissing the suit. Again, we are not persuaded by this case. We also note that on appeal after a second trial, the Louisiana

Court of Appeals dismissed plaintiff's suit on the grounds that it was the child's negligence that caused the accident and pretermitted consideration of whether the accident arose out of the use of the automobile. (See Baudin v. Traders and General Insurance Company, La.App., 252 So.2d 133.)

In the Mississippi case, Merchants Co. v. Hartford Accident & Indemnity Co., supra, the insured's truck had gone into a ditch. Poles were used in extricating it and these poles were left in the road when the truck driver drove off. That night an automobile struck one or more of the poles and the plaintiff, who was riding in the automobile, was severely injured. The plaintiff recovered a judgment against the truck owner. The Supreme Court of Mississippi held that the dangerous situation created by leaving the poles in the road and causing the injury arose out of the operation or use of the truck, and the insurer was liable under the insurance policy for the resulting damages.

In the present case no dangerous situation was created by the use of Heth's automobile and we do not consider the above mentioned Mississippi case apposite.

We find assignment of error No. 3 to be without merit.

Assignment of error No. 1 asserts that the Chancellor erred in rendering judgment in favor of the appellees (respondents below) and against the appellant (complainant below).

Assignment of error No. 2 asserts that the Chancellor erred as a matter of law in ruling that coverage was afforded to respondent-appellee Dennis Lee Heth by American Liberty's policy.

■ In one section of appellant's argument under these assignments, counsel for appellant claims error in the decree in that counsel contends the occurrence was within a special exclusion clause of American Liberty's policy excluding coverage for damage caused intentionally by the insured. In brief counsel argues:

"The findings of the Chancellor are as a matter of law that the shooting was not an intentional act."

The findings of the Chancellor in this regard were based on the evidence produced in the hearing below, and his application of the law to such facts, and not a finding merely of a matter of law.

We have carefully read the testimony, and are clear to the conclusion that the finding of the Chancellor that the shooting was not intentional is amply, and we might say, overwhelmingly supported by the evidence. No error resulted in the ruling of the Chancellor in this regard.

■ Counsel further argues separately under these assignments that no coverage was afforded by the American Liberty policy because of the "Special Exclusions" clause in the policy providing that it did not apply to the use of automobiles while away from the premises. The shooting occurred some two miles distant from the Heth's premises.

What we have said above as to "injuries arising out of the use of an automobile" in considering whether under the State Farm policy the injury arose out of the use of an automobile, is, we think, applicable to the "use" of an automobile, and we are in accord with the Chancellor's conclusions and decree that there was no causal relationship within the meaning of the policy between the "use" of Heth's automobile and the shooting. As stated in Appleman, Insurance Law and Practice, Vol. 7A, Sec. 4500, at p. 71:

"Where accidents arising in connection with the maintenance, use, or operation of an automobile are excluded, this has been held to contemplate accidents immediately associated therewith. The insurer would be liable where the injury did not arise out of a service directly connected with the use of such vehicles."

■ Further, it must be remembered that we are here considering an exclusion or exception to the policy coverage. Such clauses must be construed most strongly against the company that drew the policy and issued it. American Nat. Ins. Co. v. Hammett, 26 Ala.App. 552, 163 So. 461; Brenner v. Aetna Ins. Co., supra.

We find no error in the decree arising from this facet of the decree.

■ Under assignments of error Nos. 1 and 2, which have already been set out, and under assignments of error Nos. 6 and 7, which relate to the points raised under assignments Nos. 1 and 2, counsel for appellant contends that the Chancellor erred in decreeing that coverage was afforded Dennis Lee Heth under the American Liberty policy as to Miss Soules' claim in view of the late notice of the occurrence given to American Liberty.

Under a "Notice of Occurrence" provision in the American Liberty policy, it is provided that:

"When an occurrence takes place, written notice shall be given by or on behalf of the insured to this company or any of its authorized agents as soon as practicable."

Under another provision in the policy, it is provided that no action shall be against the company unless, as a condition precedent, the insured shall have fully complied with all the terms of the policy.

To recapitulate, the shooting occurred on 29 July 1967, as well as the automobile collision occurring while Heth was driving Miss Soules to a hospital. Both occurrences were reported promptly to State Farm, Heth's automobile insurer. Heth testified he was unaware that his parents had a homeowner's policy with American Liberty, and his parents testified they were unaware that an occurrence such as the shooting incident was covered by their homeowner's policy. On 20 May 1968, Dennis Lee Heth received the letter from Miss Soules' attorney relative to her claim for damages for injuries suffered in the shooting. Dennis Lee Heth and his father then consulted their attorney. It was the attorney's opinion that the homeowner's policy issued by American Liberty would afford coverage to Dennis Lee Heth. Written notice of the occurrence was then given by the Heth's attorney to American Liberty by letter received by the company on 11 June 1968.

The question thus presented is, was this notice given as soon as practicable under all the facts?

While some jurisdictions look to whether the insurer is prejudiced by a late notice, this court in American Fire & Casualty Co. v. Tankersley, 270 Ala. 126, 116 So.2d 579, adopted the rule established by the great weight of authority that where in a policy, such as is involved in this case, notice of the accident and forwarding of any demand, summons, or other process are specifically made conditions precedent to any action against the insurer, the failure to give a reasonably timely notice of the accident, or notice of any demand or process, will release the insurer from obligation under the policy, although no prejudice may have resulted.

But regardless of whether late notice is, or is not, prejudicial, the question yet remains as to whether the notice in this case was given as soon as practicable. We have found no Alabama cases bearing on this point.

In Young v. Travelers Ins. Co. (5 CCA), 119 F.2d 877, Judge Hutcheson wrote:

"The time words in the clause, 'as soon as practicable' are not words of precise and definite import. They are roomy words. They provide for more or less free play. They are in their nature ambulatory and subject under the guiding rule, to the impact of particular facts on particular cases. They do not in terms require immediate notice or notice within a particular number of days. They may not be so construed. They do not even provide for notice 'as soon as possible.' In terms, they require notice 'as soon as

practicable' and they must be construed as requiring the notice within a reasonable time under all the circumstances, to effectuate the objects and the purposes of the notice clause."

And in Couch on Insurance, 2d Ed. Vol. 13, Sec. 49:328, the doctrines of the cases as to the meaning of "as soon as practicable" are summarized as follows:

"Notice as soon as practicable in a policy covering liability for personal injury and property damage means within a reasonable time and what is a reasonable time depends upon the facts and circumstances of the case."

■ The authorities are more or less uniform to the effect that where a named insured, who is usually in possession of a policy, fails to give notice within a reasonable time of an occurrence, the insurer is relieved of liability under the policy where "reasonable", "immediate", or "as soon as practicable" notice is required in the policy and such notice is made a condition precedent to an action on the policy.

But in this case we are not concerned with a named insured, but with an unnamed additional insured who testified that he was unaware that his parents had a homeowner's policy. His parents, the named insured in the homeowner's policy, testified that they were unaware that coverage was afforded their son under the policy until advised of such coverage by their attorney.

In Couch on Insurance, 2d Ed. Vol. 14, Sec. 49:424, it is stated:

"Ignorance of the existence of the policy generally frees a claimant from the limitation contained therein for filing proofs of loss and he is entitled to file such proofs within a reasonable time after learning of the existence of the policy and obtaining possession of it."

Supportive of this statement, the author cites Missouri State Life Ins. Co. v. Barron, 186 Ark. 46, 52 S.W.2d 733; New Amsterdam Casualty Co. v. Plaza Square Realty Co., 101 Ind.App. 174, 195 N.E. 289, and Woodard v. Security Ins. Co., 201 Iowa 378, 207 N.W. 351.

To the same effect, with additional and different citations of supporting authorities, see Appleman, Insurance Law and Practice, Vol. 8, Secs. 4745 and 4734. In Sec. 4734 the author states:

"* * * Generally the question of whether notice has been given without unnecessary and unreasonable delay is one of fact for the jury, although under proper circumstances it may become a question of law."

In Abington Mutual Fire Ins. Co. v. Drew et al., 109 N.H. 464, 254 A.2d 829, the court considered the effect of a late notice by a named insured who was unaware of the coverage afforded by his homeowner's policy until after consultation with his attorney. In considering whether this was an extenuating circumstance excusing the late notice, the court, after stating that in an ordinary insurance policy it was the law of New Hampshire that an insured is presumed to have knowledge of the conditions of his policy requiring notice, and failure to give a reasonable notice because of such lack of knowledge is not an extenuating circumstance, for "These are relatively simple matters that the average layman should know", nevertheless as to delay in giving notice where an omnibus coverage clause in a homeowner's policy is involved, wrote:

"* * * Determination of the coverages afforded by the omnibus liability coverage contained in a homeowner's policy is a different matter and we would not presume such knowledge as a matter of law. This court has recognized that it is difficult for an untrained layman to understand the complexity of omnibus coverage in other cases (Aetna Insurance Company v. State Motors, Inc., 109 N.H. 120, 244 A.2d 64; Peerless Ins. Co. v. Gould, 103 N.H. 134, 166 A.2d 462) and the same complexities are present here. Accordingly, whether the insured's failure to discover his coverage until he consulted an attorney was an extenuating

circumstance in this case was a question of fact. The evidence justified the Trial Court's finding that the notice was given as soon as practicable under all the circumstances."

In the present case not only were Dennis Lee Heth, the additional insured, and his parents, the named insureds, unaware of coverage afforded by the parents' homeowner's policy, but Dennis Lee Heth testified he was unaware even of the policy itself.

In Central Surety and Ins. Corp. v. Anderson et ux. (Tex.Civ.App.), 446 S.W.2d 897, it was held that notice was given as soon as practicable by the additional insureds under a homeowner's policy where the evidence showed that the additional insureds did not learn of the policy until almost three years after the injury at which time they gave notice. The court wrote in the course of the opinion:

"Such additional insured could not be expected nor required to give notice before he knew of the existence of the policy or of the fact that he was covered thereby."

We consider this case significant in that one of the cases cited and relied on by the appellant is another and prior Texas case, Kellum v. Pacific National Fire Ins. Co. (Tex.Civ.App.), 360 S.W.2d 538, involving a declaratory judgment action. The *named insured* had injured another party on a hunting trip. Notice was given the insurer by the named insured some ten months later. The policy required notice as soon as practicable. The insured's excuse for the late notice was that he was unaware that the policy covered this type of accident. The court concluded that since Kellums had possession of the policy and ample opportunity to read it, the terms of the policy had been breached as a matter of law by the late notice.

Counsel for appellant place much reliance upon Standifer v. Aetna Casualty & Surety Co., D.C., 319 F.Supp. 1385, wherein it was held that the omnibus insureds had not used reasonable diligence in complying with the notice provision in the policy, and therefore the insurer was under no obligation under its policy.

In *Standifer,* supra, an action was brought in the U. S. District Court for the Northern District of Alabama, to make available coverage under the uninsured motorist provision of an automobile policy, issued to Frank Vivian as the named insured, by Aetna Casualty and Surety Company.

It appears that Michael David Standifer and Eloise (Standifer) Vivian had recovered judgments in the state court against one Garret, an uninsured motorist for injuries to Michael David Standifer.

The insurance policy issued by Aetna was retained in the office of the agent in Sylacauga. While the opinion does not so state, we think the assumption warranted that Michael David Standifer and Eloise (Standifer) Vivian were additional or omnibus insureds under the policy issued to Frank Vivian.

No notice of the filing or pendency of the suits in the state court was given Aetna. However, the opinion recites that Mrs. Vivian "states that the insurance agency in Sylacauga, Alabama, knew that the suits were being filed." The only inference to be drawn from this recital is that Mrs. Vivian knew of the existence of the policy issued to Frank Vivian and retained in the agent's office.

The insureds contended that they should be excused from the notice provisions in the Aetna policy because the agent in Sylacauga knew of the filing of the suits in the state court, and also because the policy had remained in the agent's office in Sylacauga.

After holding that knowledge of the agent of the filing of the suits in the state court was no substitute for the requirement in the notice provision of the Aetna policy that suit papers be forwarded to the company, the court further held that the

failure of the insureds (apparently both the named insured and the additional or omnibus insureds) to forward the suit papers to Aetna, or even to give written notice of the pendency of the actions until some 28 months after the state actions were commenced, and 16 months after entry of judgments nil dicit therein, required the conclusion that, as a matter of law, the insureds had breached the conditions of the policy, notwithstanding the fact that the policy was retained in the agent's office, and that the insureds had failed to use reasonable diligence to obtain such information as would enable them to comply with the policy.

We consider the facts in *Standifer* differ to such an extent from the facts in the case now being considered as to make *Standifer* inapposite.

We likewise consider the facts in Navigizione Alta Italia v. Columbia Casualty Co. (5 CCA), 256 F.2d 26, cited by appellant inapposite for the reason that again a suit seeking coverage on a Manufacturers and Contractors policy was brought against the insurer by a steamship owner over three years after the accident and over 18 months after a judgment was obtained against the shipowner. A special endorsement in the policy, obtained by Walsh Stevedoring Company, named as insureds any steamship company "for whom Walsh Stevedoring Company is loading or unloading." The insurer had never received notice of the accident nor of the suit against the shipowner. After holding the insurer was not liable under the policy because of breach of the terms of the policy relative to notice and forwarding of suit papers, the court also stated in effect that Walsh Stevedoring Company having taken out the policy specifically for steamship owners, Walsh's knowledge of the accident was in law notice to the shipowner of the accident.

We think that it would be pressing too far the fiction of constructive notice by Heth of the terms of his parents' homeowner's policy in light of his testimony that he was unaware even of the policy itself.

This situation is illustrated, we think, by the diversity of appellant's argument which on the one hand contends that the shooting resulted from the "use" of an automobile and that coverage, as a matter of law, should be cast on State Farm under its policy, and excluded under the American Liberty policy for the same reason, while on the other hand appellant argues Heth should have been aware of the types of insurance, and the coverages available and the conditions and exclusions of all of his parents' policies.

We hold that whether notice was given as soon as practicable under all of the facts and circumstances shown was a question of fact to be resolved by the trier of fact. We further hold that there was no palpable abuse of the Chancellor's discretion in the determination made by him from the facts presented.

Affirmed.

HEFLIN, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.