533 So.2d 809 (1988)
Robert QUARLES, et al., Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Appellees.
Nos. 87-1670, 88-82.
District Court of Appeal of Florida, Fifth District.
July Term 1988.
October 6, 1988.
Rehearing Denied November 15, 1988.
Charles Rand of Jacobs and Goodman, P.A., Altamonte Springs and Barbara Green, Miami, for appellants.
Donald L. O'Dell of Markel, McDonough & O'Neal, Orlando, for appellee, Georgia American Ins. Co.
Thomas G. Kane of Kane & Williams, Orlando, for appellee, State Farm Mut. Auto. Ins. Co.
DANIEL, Judge.
The Quarles, as personal representatives of the estate of their son Craig, appeal the dismissal with prejudice of their amended complaint against State Farm Mutual Automobile Insurance Company and Georgia American Insurance Company.[1] The Quarles argue that the trial court erred in holding that the automobile insurance policies *810 issued by State Farm and Georgia American did not provide coverage for the accident which resulted in their son's death. We agree and reverse.
The Quarles filed suit against State Farm Mutual Automobile Insurance Company, Georgia American Insurance Company, and State Automobile Mutual Company seeking a declaratory judgment under insurance policies issued by the companies. The Quarles alleged that their son was accidently shot and killed when he received a shotgun wound to his head. At the time of the accident Craig was standing next to a 1974 Ford pickup truck conversing with the vehicle's operator, Phil Riter, Jr. The truck was equipped with a permanently affixed gun rack attached to the interior of the passenger compartment. The Quarles alleged that Riter was attempting to unload a shotgun which was located in the gun rack within the vehicle when the shotgun, while still in the gun rack, discharged unexpectedly resulting in their son's fatal injury.
The Quarles sought a declaration that they were entitled to uninsured motorist's benefits and PIP benefits from State Farm, their own insurance carrier, because their son's death was caused by an accident arising out of the use, operation or maintenance of a motor vehicle. The Quarles also sought a declaration that the liability provisions of the automobile insurance policy issued to Riter by Georgia American and a homeowner's policy issued to Riter by State Automobile provided coverage for this accident.[2] The Quarles' amended complaint against State Farm and Georgia American was ultimately dismissed on the basis that it failed to show a causal connection between the motor vehicle and the injury for purposes of automobile insurance.
The policy issued by State Farm provided PIP benefits "in accordance with the No-Fault Act for bodily injury to an insured caused by an accident resulting from the ownership, maintenance or use of a motor vehicle." The policy provided uninsured and underinsured motorist coverage for bodily injury "caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle." The policy issued by Georgia American to Riter paid damages for bodily injury for which any covered person became legally responsible because of an auto accident. The term "covered person" was defined as the insured or any family member for the ownership, maintenance or use of any auto or trailer.
The Quarles contend that the trial court erred in its determination that their amended complaint failed to establish a causal connection between the ownership, use or maintenance of the motor vehicle and the accident. Specifically, the Quarles point out that the pickup truck had a permanently attached gun rack which had been installed for the purpose of transporting firearms, the shotgun discharged while mounted in the gun rack, transportation of the gun rack was one of the truck's intended, regular uses and the truck was being used for that purpose at the time of the accident. The insurance companies contend that the trial court was correct in dismissing the Quarles' amended complaint because it is not enough that an automobile be the physical situs of the injury or that the injury occur incidentally to the use of an automobile and that for coverage to apply, there must be a showing that the automobile itself was used in some manner to cause or produce the injury. Here the insurance companies contend that the allegations in the amended complaint show that the pickup truck was not being used at the time of this incident for any purpose other than as a resting place for the shotgun.
This court has previously held that where a motor vehicle is merely the situs of an injury that could have happened anywhere, the injuries do not arise out of the "ownership, maintenance or use" of the motor vehicle. Fleming v. Hill, 501 So.2d 715 (Fla. 5th DCA 1987); American States Insurance Company v. Allstate Insurance Company, 484 So.2d 1363 (Fla. 5th DCA 1986); Reynolds v. Allstate Insurance Company, 400 So.2d 496 (Fla. 5th *811 DCA 1981). Other courts have also held that the mere fact that the insured vehicle is the situs of the injury is an insufficient nexus to allow for coverage. See, e.g., Doyle v. State Farm Mutual Automobile Insurance Company, 464 So.2d 1277 (Fla. 3rd DCA 1985); Allstate Insurance Company v. Famigletti, 459 So.2d 1149 (Fla. 4th DCA 1984); Hutchins v. Mills, 363 So.2d 818 (Fla. 1st DCA 1978); Watson v. Watson, 326 So.2d 48 (Fla. 2d DCA 1976).
Cases in which insurance coverage has been found have involved more than the insured vehicle being the situs of the accident. For example, in Government Employees Insurance Company v. Novak, 453 So.2d 1116 (Fla. 1984), the insured was in her car when she was approached by a stranger who asked her for a ride. She refused, the assailant shot her, pulled her from the car, got in it and drove away. The Florida Supreme Court noted that while the phrase "arising out of" should be read to affect broad coverage, a nexus between the motor vehicle and the injury is required. Since the obtaining of a ride or the possession of the insured motor vehicle was what motivated the attack, the court found the necessary nexus. See also Hernandez v. Protective Casualty Insurance Company, 473 So.2d 1241 (Fla. 1985); National Indemnity Company v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971).
While these cases establish the general principle that there must be a causal connection or nexus between the motor vehicle and the injury for purposes of insurance coverage, they do not address the fact pattern in this case. The parties have not cited any Florida cases involving injuries associated with permanently attached gun racks in motor vehicles and our independent research reveals none. However, the Missouri Court of Appeals in the oft-cited decision[3] of Cameron Mutual Insurance Company v. Ward, 599 S.W.2d 13 (Mo. Ct. App. 1980) has extensively reviewed cases from across the nation which involve accidental shootings and motor vehicles and has categorized them into five areas.
The first category of cases involves the motor vehicle as a "mere situs" for the accident. This occurs when the vehicle's occupant handles or plays with a gun causing it to accidentally discharge inside a moving or stationary vehicle. There is no coverage under these circumstances because there is no causal connection between the discharge of the gun and the inherent use of the vehicle. Id. See also Criterion Insurance Company v. Velthouse, 751 P.2d 1 (Alaska 1986) (no coverage where the defendant, while "horsing around" with friends, picked up a loaded shotgun in his vehicle and pointed it at one of his friends).
The second category involves discharges which occur while loading or unloading the vehicle. Courts generally view liability policies as extending coverage to the loading and unloading process. See, e.g., State Capitol Insurance Company v. Nationwide Mutual Insurance Company, 318 N.C. 534, 350 S.E.2d 66 (1986) (coverage provided where a rifle accidentally discharged while being removed by the insured from a motor vehicle as the use of an automobile includes its loading and unloading).
The third category of cases involves the use of a physical portion of the vehicle as a "gun rest" for the purpose of firing a weapon. The courts are apparently divided over whether there is coverage in these cases with some finding that the use of a vehicle as a gun rest constituted a use foreign to the vehicle's inherent use.
The fourth category of cases involves the accidental discharge of guns resting in or being removed from gun racks permanently attached to vehicles. Coverage was found to exist because the presence of the permanently attached gun racks in the vehicles established a significant causal connection between the use of the vehicles and the accidental discharge of the weapons *812 carried in the vehicles. See, e.g., Kohl v. Union Insurance Company, 731 P.2d 134 (Colo. 1986) (insured's use of his Jeep was causally related to accidental discharge of rifle where accident occurred while insured was lifting rifle out of Jeep's gun rack preparing to unload and safely store it for return journey); Transamerica Insurance Group v. United Pacific Insurance Company, 92 Wash.2d 21, 593 P.2d 156 (1979) (accident, which occurred when a rifle discharged after its muzzle had been lifted out of a gun rack when the trigger brushed against a rear bracket of the gun rack, arose out of the use of the vehicle); Reliance Insurance Company v. Walker, 33 N.C. App. 15, 234 S.E.2d 206 (1977) (coverage found when gun in a permanently mounted gun rack discharged as the driver began to insert his keys into the ignition).
The final category of cases involves the accidental discharge of guns inside a vehicle caused by the actual movement or operation of the vehicle. In these cases, the causal connection between the use of the vehicle and the resulting injury is quite clear and coverage has been found.
In the present case, the Quarles alleged that their son Craig was standing next to a pickup truck talking with Riter, the truck's owner. The truck had a gun rack permanently attached to the interior of the passenger compartment. As Riter was attempting to unload the shotgun while still in the gun rack, the shotgun discharged causing Craig's fatal injury. The facts of this case clearly fall within the fourth category of cases discussed above. The presence of the permanently attached gun rack in Riter's pickup truck established a significant causal connection between the use of the pickup truck and the accidental discharge of the shotgun. We also agree with the court in State Capitol Insurance Company v. Nationwide Mutual Insurance Company, 318 N.C. 534, 350 S.E.2d 66 (1986), that the transportation of firearms is an ordinary and customary use of a motor vehicle, especially pickup trucks. Since the requisite causal connection exists between the injuries suffered by the Quarles' son Craig and the use of Riter's pickup truck, the trial court erred in dismissing the Quarles' amended complaint against State Farm and Georgia American.
REVERSED and REMANDED for further proceedings.
SHARP, C.J., and DAUKSCH, J., concur.
NOTES
[1] We treat the dismissal of the amended complaint as a declaration of the rights of the parties. See Garcia v. Allstate Insurance Company, 327 So.2d 784 (Fla. 3d DCA 1976).
[2] The issue regarding homeowner's coverage is not involved in this appeal.
[3] See, e.g., Criterion Insurance Company v. Velthouse, 751 P.2d 1 (Alaska 1986); State Farm Mutual Automobile Insurance Company v. Smith, 107 Idaho 674, 691 P.2d 1289 (1984); State Farm Mutual Automobile Insurance Company v. Powell, 227 Va. 492, 318 S.E.2d 393 (1984).