Hoyt M. Taliaferro appeals from a summary judgment entered in favor of Progressive Specialty Insurance Company ("Progressive") in Progressive's action seeking a declaration of its obligations and liabilities under an automobile insurance policy. We reverse and remand.
The facts are undisputed. On December 6, 1999, Taliaferro accompanied Gerald Lee Nickles in Nickles's pickup truck; the two men were going deer hunting. As they proceeded along a "field road," with Nickles's loaded rifle on the seat between them, they encountered a vehicle parked on the roadside. Nickles and Taliaferro got out of the truck to speak with the occupants of the parked vehicle. Taliaferro returned to the truck and sat in the passenger seat.
When some deer came into view, Nickles hurried back to the driver's side of his pickup truck and asked Taliaferro to hand him the rifle. Grasping the barrel and forestock of the rifle, Taliaferro attempted to pass the weapon to Nickles — stock first — through the open window. Nickles accidentally pulled the trigger and the rifle discharged, striking Taliaferro in the right leg. The injury eventually required the amputation of Taliaferro's right leg. *Page 978 
At the time of the accident, Nickles had an automobile insurance policy issued by Progressive. It contained liability coverage that provided, in pertinent part: "[W]e will pay damages for bodily injury for which an insured person becomes legally responsible because of an accident arising out of the ownership, maintenance or use of a vehicle." (Emphasis omitted.) On June 22, 2000, Progressive filed a complaint, seeking a judgment declaring 1) that "Taliaferro [was] not entitled to medical payments coverage under the Progressive policy because his accident did not arise out of the ownership, maintenance, or use of the insured vehicle," and 2) that Progressive had "no duty to defend or indemnify Gerald Lee Nickles as a result of the hunting accident."
Taliaferro and Progressive each filed a motion for a summary judgment. The trial court granted Progressive's motion, and denied Taliaferro's motion. Taliaferro appealed. The question on appeal is a legal one — whether an injury resulting from the accidental discharge of a hunting weapon during a hunter's attempted removal of the weapon through the open window of a vehicle being used to hunt deer constitutes an "accident arising out of the ownership, maintenance or use of" the vehicle, as those terms are used in a policy insuring the vehicle.
Progressive states the issue as "whether the injuries caused by afirearm `arise out of the ownership, maintenance, or use of a vehicle.'"Brief of Appellee, at 5 (emphasis added). This statement of the issue is too broad, however, because it overlooks dispositive factual distinctions by which such injuries are generally categorized. As noted in Quarles v.State Farm Mutual Automobile Insurance Co., 533 So.2d 809 (Fla.Ct.App. 1988), "cases from across the nation which involve accidental shootings and motor vehicles [can be] categorized," id. at 811, relatively conveniently into several distinct classes of cases, testing the meaning of the clause "ownership, maintenance, or use."
In one such category are those cases in which the automobile is "a `mere situs' for the accident. This occurs when the vehicle's occupant handles or plays with a gun causing it to accidentally discharge inside a moving or stationary vehicle." 533 So.2d at 811. In such cases, courts have declined to find coverage, on the ground that "there is no causal connection between the discharge of the gun and the inherent use of the vehicle." Id.
Of this class of cases is American Liberty Insurance Co. v. Soules,288 Ala. 163, 258 So.2d 872 (1972), a case on which Progressive relies. That case arose out of a shooting accident, involving Deputy Sheriff Dennis Lee Heth and Eldora Marie Soules, that occurred while the couple was sitting inside a parked vehicle. Id. at 165, 258 So.2d at 873. "Heth had placed [the pistol he customarily carried] behind himself pushed down between the seat and the back of the seat." Id. During the course of the couple's conversation, the pistol "became uncomfortable" to Heth, and he was proceeding to move it "to another place when it fired." The cause of the discharge was unknown. Id.
At the time of the accident, Heth had in force an automobile insurance policy, which provided coverage for liability "[b]ecause of (a) bodily injury sustained by other persons . . . caused by accident arising out of the ownership, maintenance, or use . . . of the owned automobile." Id. at 167, 258 So.2d at 875. The trial court held that the accident was not covered by the policy. This Court agreed. In doing so, it explained:
 "There must be a causal connection between the accident arising out of the use of the automobile before coverage can be *Page 979 
 successfully invoked. While Heth and Miss Soules were sitting in the automobile at the time the pistol went off, there is nothing from which an inference can be drawn connecting the automobile with the firing of the pistol. The injury was not one arising from, or connected with the inherent use of the automobile as a vehicle. The automobile was merely the situs of the accident which could as well have occurred in any other location."
Id. at 167, 258 So.2d at 875-76 (emphasis added).
Logically, this category also includes those cases involving an assault with a weapon — whether or not a firearm — occurring in or around an automobile. See Allstate Ins. Co. v. Skelton, 675 So.2d 377,382 (Ala. 1996) (a roadside altercation between the driver of one vehicle and the passenger of another vehicle, involving an assault by the passenger upon the driver with a pistol, did not arise out of the "use" of an automobile, because the assault had no "causal connection" with the "use" of an automobile, and because "the injurious act" was not "within the contemplation of the insurer and the insured"); United States Fid. Guar. Co. v. Lehman, 579 So.2d 585, 586 (Ala. 1990) (where a passenger in a moving vehicle was stabbed by the driver, the injuries did not arise out of the "use" of the automobile, because "the vehicle itself was merely the location of an attack that could have occurred anywhere");Rich v. Colonial Ins. Co. of California, 709 So.2d 487, 489
(Ala.Civ.App. 1997) (gunshot wound inflicted upon the driver of an automobile by two pedestrians, attempting to wrest from the driver the keys to the vehicle as it was stopped at a traffic light, did not arise out of the "use" of the automobile, because the "vehicle was, by chance, the location of the attack").
Another class of cases "involves the use of a physical portion of the vehicle as a `gun rest' for the purpose of firing a weapon." Quarles, 533 So.2d at 811. "The courts are apparently divided over whether there is coverage in these cases with some finding that the use of a vehicle as a gun rest constituted a use foreign to the vehicle's inherent use." Id. See, e.g., Fidelity Cas. Co. of New York v. Lott, 273 F.2d 500 (5th Cir. 1960) (use of the vehicle as a gun rest was a covered use); Hutchinsv. Mills, 363 So.2d 818 (Fla.Ct.App. 1978) (use of a vehicle as a gun rest was not a covered use).
Yet another class of cases "involves the accidental discharge of guns resting in or being removed from gun racks permanently attached to vehicles" (the "gun-rack cases"). Quarles, 533 So.2d at 811. "Coverage was found to exist because the presence of the permanently attached gun racks in the vehicles established a significant causal connection between the use of the vehicles and the accidental discharge of the weapons carried in the vehicles." Id. at 811-12 (citing Kohl v. Union Ins. Co.,731 P.2d 134 (Colo. 1986), and Reliance Ins. Co. v. Walker,33 N.C. App. 15, 234 S.E.2d 206 (1977)). But see Mid-Century Ins. Co. ofTexas v. Lindsey, 997 S.W.2d 153 (Tex. 1999) ("[A] firearm discharge related to a gun rack does not arise out of the use of the vehicle merely because the gun rack is permanently attached. Rather, the purpose and circumstances of the injury-producing act are determinative."); StateFarm Mut. Auto. Ins. Co. v. Powell, 227 Va. 492, 318 S.E.2d 393 (1984) (fatal injury did not arise out of the "use" of a vehicle, where it resulted from the spontaneous discharge of a weapon resting in a gun rack in a stationary vehicle).
Still a fourth class of cases involves injuries that occur when a firearm discharges, while being loaded into, or unloaded from, *Page 980 
the vehicle. "Courts generally view liability policies as extending
coverage to the loading and unloading process." Quarles, 533 So.2d at 811 (emphasis added). See, e.g., the following cases in which the courts held that the policies covered the resulting injuries: Garrison v. State FarmMut. Auto. Ins. Co., 258 Kan. 547, 907 P.2d 891 (1995) (during a hunting trip, a shotgun accidentally discharged as it was being removed from an automobile to shoot birds); Union Mut. Fire Ins. Co. v. Commercial UnionIns. Co., 521 A.2d 308 (Me. 1987) (during a hunting trip, a shotgun accidentally discharged as it was being removed from an automobile to shoot geese); Perryman v. Citizens Ins. Co. of America, 156 Mich. App. 359,401 N.W.2d 367 (1986) (during a hunting trip, a shotgun accidentally discharged as it was being removed from an automobile for safekeeping during the night); State Capital Ins. Co. v. Nationwide Mut. Ins. Co.,318 N.C. 534, 350 S.E.2d 66 (1986) (during a hunting trip, a rifle accidentally discharged as it was being removed from an automobile to shoot a deer); Nationwide Mut. Ins. Co. v. Wright, 70 Ohio App.3d 431,591 N.E.2d 362 (1990); Travelers Ins. Co. v. Aetna Cas. Sur. Co.,491 S.W.2d 363 (Tenn. 1973) (during a hunting trip, a shotgun accidentally discharged as it was being placed into an automobile through a rear window); State Farm Mut. Auto. Ins. Co. v. Rice, 239 Va. 646,391 S.E.2d 71 (1990) (during a hunting trip, a rifle accidentally discharged as it was being removed from an automobile to begin the hunt); Allstate Ins. Co. v. Truck Ins. Exch., 63 Wis.2d 148, 216 N.W.2d 205
(1974).[1] But see Watson v. Watson, 326 So.2d 48 (Fla.Ct.App. 1976) (a handgun accidentally discharged as it was being removed from an automobile; "unloading" as a ground for coverage was not specifically discussed and apparently was never asserted by the proponent of coverage).
It is fundamental that insurance contracts are to be "construed liberally in favor of the insured and strictly against the insurer."Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala. 1996). Moreover, "[t]he term `arising out of the use' in liability policies has generally been held to be a broad, comprehensive term meaning `origination from,' `having its origin in,' `growing out,' or `flowing from.'" TravelersIns. Co., 491 S.W.2d at 365. "The term `use' . . . has been a general catch-all term construed by the courts to include all proper uses of a vehicle." Id. "The transportation of firearms is an ordinary and customary use of a motor vehicle, especially pickup trucks." StateCapital Ins. Co., 318 N.C. at 540, 350 S.E.2d at 69. "Coverage exists where the minimal causal connection between the use of the vehicle and the injury is provided by the foreseeable and reasonable use of the vehicle for hunting." Garrison, 258 Kan. at 551-52, 907 P.2d at 895.
"[U]se of an automobile includes its loading and unloading." StateCapital Ins. Co., 318 N.C. at 540, 350 S.E.2d at 69. See 12 Couch onInsurance § 45:70 (2d ed. 1981) ("Harm sustained by third persons while a truck is being unloaded is deemed to come within the `use' coverage of liability insurance on the theory that unloading is an essential part of using the vehicle.") (footnote omitted). "Coverage applies whether the policy expressly defines `use' to include loading or unloading the *Page 981 
vehicle." Garrison, 258 Kan. at 551, 907 P.2d at 894.
The case under review here falls into this fourth class of cases. In this case, a rifle accidentally discharged during a hunting trip as the weapon was being removed through the open window of a pickup truck to shoot a deer.[2] Because the principal use of an automobile is transportation — being dependent upon the operations of loading and unloading — the act of removing the rifle was an "inherent use of the automobile as a vehicle," as that concept was discussed in Soules,288 Ala. 163, 258 So.2d 872, rendering the pickup truck more than the mere "situs of the accident."
For these reasons, the trial court erred in holding that the injuries Taliaferro sustained as a result of the accident were not covered by the Progressive automobile policy. The summary judgment in favor of Progressive is, therefore, reversed, and the cause is remanded for the entry of a judgment in favor of Taliaferro.
REVERSED AND REMANDED.
Moore, C.J., and Houston, See, Lyons, Brown, Johnstone, Harwood, and Stuart, JJ., concur.
[1] Obviously, the gun-rack cases that involve the loading or unloading of an automobile may also be grouped in this category.
[2] "[T]he process of unloading includes at least the entire operation during which the article is lifted and removed from the vehicle up to the moment when [the article] has actually come to a place of rest outside the vehicle and the connection of the vehicle with the process of unloading has ceased." Pacific Indem. Co. v. Run-A-Ford Co., 276 Ala. 311,314, 161 So.2d 789, 791 (1964).