**David PEAGLER, Personal Representative of the Estate of Kathy Marie Thompson, Plaintiff,**

v.

**USAA INSURANCE COMPANY, Defendant.**

**No. CIV.A. 2:02–3977–18.**

United States District Court, D. South Carolina, Charleston Division.

June 24, 2004.

J. Calhoun Land, IV, Land, Parker and Reaves, Manning, SC, for Plaintiff.

William O Sweeny, III, Sweeny, Wingate and Barrow, Columbia, SC, for Defendant.

## ORDER

NORTON, District Judge.

### I. Background

This matter comes before the court on the parties' cross motions for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff seeks a declaration from this court that the tragic death of Kathy Marie Thompson ("Mrs. Thompson") is a covered event under an automobile insurance policy issued by defendant, USAA Casualty Insurance Company ("USAA"). The facts of the case are undisputed and have been formally stipulated to by the parties.

Mrs. Thompson died suddenly on August 31, 2001 as a result of wounds she received from the discharge of a shotgun. At the time of her death, she was seated in the driver's seat of a $4 \times 4$ SuperCab, 2000 Ford F–150 pickup truck (hereinafter referred to as "the truck"), owned by her husband, Greg Thompson ("Mr. Thompson").[1]

Both parties agree that Mrs. Thompson's death was the result of a terrible accident. On the morning of her death, Mrs. Thompson was in the process of loading her children into her Ford Taurus to take them to school. She was unable to start the Taurus and Mr. and Mrs. Thompson agreed that she would take the children to school in the pickup truck while Mr. Thompson attempted to repair the Taurus at their home. Once Mrs. Thompson and the Thompsons' older son were sitting in the truck, their younger son noticed that two cased shotguns were laying on the backseat. The guns were left in the truck from the day before, when Mr. Thompson and his older son were target shooting in preparation for the upcoming hunting season. At Mrs. Thompson's re-

---

1. The truck was insured by defendant USAA pursuant to the terms of an insurance policy numbered 00036–72–21C–7104–4. Both the truck and the Thompsons' other vehicle, a 1992 Ford Taurus four-door sedan, were insured under this policy.

quest, the younger son asked his father to remove the shotguns from the truck. When Mr. Thompson came to retrieve the guns from the truck he was under the mistaken assumption that both guns were unloaded. Tragically, the gun which the older son had used during the previous day was still loaded with its safety off. As Mr. Thompson removed the guns the loaded gun discharged, killing Mrs. Thompson almost instantaneously.[2] At the time of the accident, the truck was in park and was idling, but both parties agree that this fact was not a contributing cause of the accident.

Plaintiff thereafter brought this action for declaratory relief pursuant to S.C.Code Ann. § 15–53–10 et seq. seeking a determination that Mrs. Thompson's death is covered under the USAA automobile insurance policy. For the reasons set forth below, the court concludes that judgment should be granted in plaintiff's favor.

## II. Standard of Review

Summary judgment shall be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party carries its burden of showing that there is an absence of evidence to support a claim, then the non-moving party must demonstrate by affidavit, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact for trial. Id. at 324–25, 106 S.Ct. 2548. An issue of fact is "genuine" when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under the governing substantive law. Id. When determining whether there is an issue for trial, the court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123–24 (4th Cir.1990).

## III. Discussion

■ Both parties acknowledge that the fundamental issue facing the court is whether Mrs. Thompson's death may be

2. The parties' Stipulation of Facts describes the factual details leading up to the accident as follows:

That Mr. Thompson came out of his residence along with his 9 year old son at which time his son went around to the rear passenger side door, which he had previously opened. That Greg Thompson went to the passenger side rear door which he opened and then entered the cab area of the truck lifting the guns off the rear sitting area and placing the barrel of the guns pointing toward the floor with the butt ends pointing towards the truck's rear area window. That he assisted his 9 year old son in getting into the truck cab, moved his book

bag over, and helped him fasten his seat belt at which point his 9 year old son shut his door. That Mr. Thompson, now situated with his left knee on the truck's rear seat and his right foot on a truck running board, again lifted the guns and began to exit the vehicle, when almost instantaneous with his lifting the guns from the floor and beginning to exit the vehicle, one of the shotguns discharged striking Kathy Marie Thompson in the torso with shotgun pellets traveling between the front seats on to break the left side driver's door glass. None penetrated the metal skin of the truck.

(Stipulation of Facts at ¶ 4).

interpreted as arising out of the "ownership, maintenance or use" of the truck in which she was fatally shot. This specific issue arises from statute, as S.C.Code Ann. § 38–77–30 defines the term, "policy of automobile insurance," in relevant part as "a policy or contract for bodily injury or property damage liability insurance issued or delivered in this State covering liability arising from the ownership, maintenance or use of any motor vehicle . . . ." [3] (Def.'s Mem. in Supp. at 3).

■ The parties additionally agree that the South Carolina Supreme Court has addressed this issue and has provided a three-pronged test for its determination. First, the party seeking coverage must establish a causal connection between the vehicle and the injury. Second, there must exist no act of independent significance breaking the causal link. And third, it must be shown that the vehicle was being used for transportation purposes at the time of the accident. *Travelers Indemnity Co. v. Auto World of Orangeburg, Inc.*, 334 S.C. 137, 511 S.E.2d 692, 698 (App.1999) (citing *State Farm Fire & Cas. Co. v. Aytes*, 332 S.C. 30, 503 S.E.2d 744, 745 (1998)). Each of these elements must be shown by the plaintiff before coverage will be extended. Of course, the parties' disagreement on the application of this test has brought the matter before this court. USAA contends that none of the three elements are satisfied by the circumstances surrounding Mrs. Thompson's un-

timely death, while plaintiff asserts that each element is fulfilled. As discussed below, this court is of the opinion that each element is satisfied and, therefore, concludes that Mrs. Thompson's death is covered under the terms of the subject policy.

### a. Whether a causal connection exists between the use of the truck and Mrs. Thompson's death

■ With respect to this first element, the South Carolina Supreme Court observed in *Aytes* that:

> The causation required is something less than proximate cause and something more than the vehicle being the mere site of the injury. The injury must be foreseeably identifiable with the normal use of the vehicle. The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle where the shooting occurred.

*Aytes*, 503 S.E.2d at 745–46 (citations omitted). In other words, where it may be said that the vehicle's use was merely "incidental" to the harm caused, then coverage does not apply.[4] Rather, the "use" of the vehicle and the attendant injury must be "inextricably linked." *Travelers Indemnity Co.*, 511 S.E.2d at 696 (quoting *Home Ins. Co. v. Towe*, 314 S.C. 105, 441 S.E.2d 825, 827 (1994)).

---

**3.** Automobile insurance policies issued in South Carolina must conform to this requirement. *See Wright v. North Area Taxi, Inc.*, 337 S.C. 419, 523 S.E.2d 472, 474 (App. 1999) (citing S.C.Code Ann. § 38–77–140 and observing that "[n]o automobile insurance policy may be issued in this State unless it contains a provision protecting the person defined as an insured against 'loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use' of the motor vehicle").

**4.** This inference stems from the Fourth Circuit's decision of *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984 (4th Cir.1985), upon which the *Aytes* Court relied in its restatement of the applicable test. *Brown* specifically held that the requisite causal connection "must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle." 779 F.2d at 989.

In arguing that the requisite causal connection is absent in this case, USAA contends that the shooting death of Mrs. Thompson could just as easily have occurred at some other location as within the truck and, therefore, asserts that the accident was not dependent upon the "use" of the truck. In USAA's words, "this was purely a firearm accident, not a vehicle accident." (Def.'s Mem. in Supp. at 6). Furthermore, USAA contends that the fact that *Aytes* involved an intentional assault, as opposed to an accidental shooting, does not distinguish it from the factual circumstances of this dispute. USAA is correct as to this latter point, as it was observed in *Towe* that: "No distinction is made as to whether the injury resulted from a negligent, reckless, or intentional act." 441 S.E.2d at 827. Therefore, the sole issue for this court's determination with respect to the first element is whether a sufficient causal connection existed between the use of the truck and Mrs. Thompson's death.

Plaintiff insists that such a connection is present in this case. Specifically, plaintiff asserts that:

> Mrs. Thompson had placed herself in the driver's position and started the engine for the purpose of transporting her children to school and herself to work. She directed that the shotguns, which were being transported in the truck for hunting purposes, be removed so that her 9 year old son could sit on the rear seat .... But for the use of the truck would Mrs. Thompson have been placed in the position to cause the damage by the negligent unloading of the shotguns[?] The loading of passengers and unloading of firearms and resulting discharge are causally connected to the truck. The connection here is close to the proximate cause of the injury and is

certainly more than the truck being the mere site of the injury.

(Pl.'s Mem. in Opp. at 3–4).

It must be acknowledged that while several other jurisdictions have dealt with coverage disputes involving the accidental discharge of a firearm in or near a vehicle, the parties have not directed the court to any precedent directly on point within this State nor has this court been able to locate any precedent addressing an injury arising out of the unloading of a firearm from a vehicle. Nevertheless, this court concludes that a causal connection exists. Mr. Thompson was clearly "using" the truck at the time of the accident in that he was unloading the firearms from the truck at the time the accident occurred. Moreover, this use was a reasonable one and, as such, it was neither unforeseeable nor unexpected. Indeed, given that the particular vehicle in question was a 4 × 4 pickup truck, it was entirely foreseeable that it would have been used at some point by its owners for hunting purposes. Likewise, it could be expected that hunting gear, including guns, would necessarily be loaded and unloaded from the truck. *See Taliaferro v. Progressive Specialty Ins. Co.*, 821 So.2d 976, 979–80 (Ala.2001) (observing that the transportation of firearms for hunting is an ordinary and customary use of a motor vehicle, especially for pickup trucks, for purposes of automobile insurance coverage).

Because this use of the truck was ordinary and expected and because the accident arose out of this use, the causal connection with Mrs. Thompson's death is not, as defendant insists, merely incidental or "but for." Nor can it simply be said that the truck was the "mere situs" of the accident. *Cf. Hartford Fire Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 264 Ark.

743, 574 S.W.2d 265 (1978) (denying coverage for a fatal shooting of a child standing outside of a camper parked in the owner's driveway without the motor running or the keys in the ignition by a child who had picked up a gun inside the camper and playfully pointed it at the decedent); *Sizemore v. Erie Ins. Exchange,* 789 N.E.2d 1037 (Ind.Ct.App.2003) (denying coverage because the vehicle only remotely contributed to the injury where a minor child was shot in the eye when he stuck his head through a friend's car window and a paintball gun accidently discharged from within the car); *Raines v. St. Paul Fire & Marine Ins. Co.,* 9 N.C.App. 27, 175 S.E.2d 299 (1970) (denying coverage where the insured's son accidentally killed a passenger of the vehicle while playing with a gun which discharged while he was sitting in the driver's seat with the car stopped and the engine turned off). Indeed, as other courts have noted, there exists a category of cases involving "injuries that occur when a firearm discharges, while being *loaded into, or unloaded from,* the vehicle[,][and] '[c]ourts generally view liability policies as *extending* coverage to the loading and unloading process.'" *Taliaferro,* 821 So.2d at 979–80 (quoting *Quarles v. State Farm Mut. Auto. Ins. Co.,* 533 So.2d 809, 811 (Fla.Ct.App.1988) (emphasis in original)); *see also Cameron Mut. Ins. Co. v. Ward,* 599 S.W.2d 13, 16 (Mo.Ct.App. 1980) (observing that a category of decisions involves the accidental discharge of guns during the process of loading them into or unloading them from vehicles and that, "without exception," these decisions "hold that coverage exists").

Accordingly, this court concludes that a sufficient causal connection exists between the use of the truck and Mrs. Thompson's death so as to satisfy the first element of the applicable test.

**b. Whether an act of independent significance broke the causal link existing between the truck's use and Mrs. Thompson's death**

■ As noted, the second element requires that there exist no act of independent significance capable of breaking the causal link between the use of the vehicle and the accident. USAA offers three distinct acts which it contends broke the causal connection between the use of the truck and Mrs. Thompson's death: (1) the fact that the shotgun's safety was not engaged at the time of the shooting; (2) Mr. Thompson's negligent manner of removing the guns as if they were unloaded; and (3) an assertion that Mr. Thompson was in fact not occupying the truck at the time of the shooting. USAA contends that any of these separate acts would operate to break the requisite causal link. The court, however, does not find any of these suggestions to be persuasive.

The first two suggestions may be generally described as alleging superceding negligent acts of leaving a loaded shotgun within the confines of the truck. These suggestions, however, frame the issue too narrowly. Perhaps because of this fact, other courts have found no difficulty in awarding coverage where a mistakenly loaded weapon was stored within a vehicle and caused injury as a result. *See Viani v. Aetna Ins. Co.,* 95 Idaho 22, 501 P.2d 706 (1976) (holding that coverage existed despite the fact that the injury was caused by the discharge of a loaded pistol unwittingly stored inside a rolled carpet while being unloaded from the vehicle), *overruled on other grounds by Sloviaczek v. Estate of Puckett,* 98 Idaho 371, 565 P.2d 564 (1977); *Allstate Ins. Co. v. Truck Ins. Exchange,* 63 Wis.2d 148, 216 N.W.2d 205 (1974) (coverage provided where a fatal shooting occurred while a loaded weapon was being removed from a truck during a

hunting trip). Further, plaintiff has pointed out that the facts, as stipulated to, indicate that Mr. Thompson was in the process of getting out of the truck when the gun discharged and was not completely outside of the truck at the time of the accident. And as plaintiff also notes, the policy defines the term "occupying" as "in, on, getting into or out of." (Pl.'s Mem. in Opp. at 6). Therefore, even assuming that Mr. Thompson's exact physical location at the time of the shooting could create an act of independent significance capable of breaking the causal connection between the use of the truck and Mrs. Thompson's death, the facts as stipulated by the parties reveal that Mr. Thompson was not located outside of the truck so as to place the accident beyond the scope of the insurance policy as USAA suggests.

Accordingly, notwithstanding any suggestion to the contrary, the court concludes that the causal connection between the truck's use and the accident remained intact.

### c. Whether the truck was being used for transportation purposes at the time of the accident

■ Finally, it must be shown that the vehicle was being used for transportation purposes at the time of the accident. This third requirement has not always been a part of the overall analysis and was added to the above factors in the decision of *Canal Ins. Co. v. Insurance Co. of North America*, 315 S.C. 1, 431 S.E.2d 577, 579–80 (1993). In adding this requirement, the South Carolina Supreme Court stated that: "We now construe § 38–77–140 and define 'use of a motor vehicle' as limited to transportation uses . . . . Such a construction of § 38–77–140 is consistent with legislative intent to mandate coverage for the benefit of the public since it encompasses those uses foreseeable to the parties to an automobile insurance policy." *Canal Ins. Co.*, 431 S.E.2d at 579–80.

■ In arguing that the truck was not being used for transportation purposes at the time of Mrs. Thompson's death, USAA emphasizes that the truck was not moving at the time of her death. USAA asserts that this particular fact is dispositive and, therefore, appears to contend that any coverage would be dependent upon a finding that a truck was moving at the time of the incident in question. This argument, however, presupposes a viewpoint much too narrow for the law to adequately allow for coverable incidents. Indeed, under USAA's theory coverage conceivably would not extend to injuries sustained under any factual scenario where a vehicle is parked only momentarily or, far worse, where injuries are sustained while a vehicle is stationary at an intersection during the course of travel. Furthermore, contrary to what USAA argues, South Carolina law does not make it clear that a vehicle must be moving in order for coverage to exist. Rather, the vehicle must have been in the process of being utilized for transportation *purposes* at the time of the accident—a vehicle need not be moving for this purpose to exist.

In adopting this third prong of analysis, the South Carolina Supreme Court specifically relied on three separate decisions by the Minnesota Supreme Court. *See Canal Ins. Co.*, 431 S.E.2d at 579. In each of these decisions coverage was not extended because the vehicle in question was *not* being used for transportation purposes at the time of the incident. The Minnesota Court made clear that such a purpose was essential to any finding of coverage because this type of "use" was normal and expected and was the use contemplated by the legislature in its decision to link coverage to vehicle use. The Minnesota Court's position was best described in the decision of *Classified Ins. Corp. v. Vodinelich*, 368 N.W.2d 921 (Minn.1985), wherein a mother's children accidentally died from as-

phyxiation when the mother committed suicide by leaving her car idling in a closed garage. There, the Court observed that:

> In previous decisions we have uniformly repeated that for coverage to exist, the vehicle must have been used "for transportation purposes" .... The requirement that coverage will exist only for injuries resulting from uses for transportation purposes is intended to limit an automobile insurance company's liability to those risks the policy was intended to insure against, that is, against risks associated with "motoring." Situations may arise that our existing language will prove insufficient to meet. If so, other alternatives may be explored; as we have stated, "each case presenting such a question must, to a great degree, turn on the particular facts presented" .... We hold that the deaths of the ... children did not arise out of the use of a motor vehicle for purposes of ... automobile liability insurance coverage because the vehicle was not being used "for transportation purposes."

*Vodinelich,* 368 N.W.2d at 923 (citations omitted).

In stark contrast to the circumstances of *Vodinelich,* the facts of this case demonstrate that the truck was being used for transportation purposes at the time of Mrs. Thompson's death. At the time of the shooting, Mrs. Thompson was seated in the drivers' seat with her seatbelt fastened and the engine running. She was preparing to take her children to school and to go to work and would have done so were it not for the cased shotguns laying on the backseat of the pickup truck. Under these circumstances it must be said that the truck was being used for one reason: to transport herself and her children. Accordingly, contrary to what USAA argues, this court concludes that the third and final element favors coverage for Mrs. Thompson's death as well.

## IV. Conclusion

For the foregoing reasons it is **ORDERED** that plaintiff's Motion for Summary Judgment be **GRANTED** based upon this court's conclusion that the applicable automobile insurance policy issued by USAA extends coverage to the accident causing Mrs. Thompson's death. This conclusion is based upon the court's determination that Mrs. Thompson's death arose out of the "ownership, maintenance or use" of the Ford truck as that term is defined under the applicable law.

**IT IS FURTHER ORDERED** that defendant's Motion for Summary Judgment be denied.

**AND IT IS SO ORDERED.**