This is an appeal from a declaratory judgment which held that Alabama Farm Bureau Mutual Casualty Insurance Company (Farm Bureau) had no duty to defend, or obligation to provide coverage, to appellant, Willie C. Watson, in a separate pending assault and battery action.
The facts giving rise to the declaratory judgment action occurred as follows: On June 20, 1980, Tim Koster and Michael Renfroe went to Koster's ex-wife's home. An argument ensued between Koster and his ex-wife Sharon. Sometime during the argument, Sharon's father, Willie Watson, telephoned her home, and he could tell that she was upset and crying. Watson then got in his car and drove towards his daughter's home. Koster and Renfroe eventually left Sharon's home and as they were driving down the road they were met by Watson. Watson got out of his car and walked up to Renfroe, who was sitting in the driver's seat of his truck, and asked, "What ya'll done to Sharon?" Watson had a gun with him and allegedly put the gun to Renfroe's head. The gun, loaded with rat shot, went off, injuring Renfroe.
Allegedly, Watson then proceeded to put the gun up to Koster's head, threatening to kill him. After Koster begged him not to shoot, Watson put the gun away and took Renfroe to the hospital.
On October 13, 1983, Renfroe filed an assault and battery complaint against Watson. Watson then contacted an attorney, who advised him to see if his homeowner's insurance policy provided coverage.
Farm Bureau filed this declaratory judgment action to determine its obligation, if any, to defend and provide coverage to Watson in the pending assault and battery action. The evidence was uncontroverted that a Farm Bureau homeowner's liability insurance policy had been issued to Watson and was in force and effect on the date of the shooting. However, the Circuit Court of Tuscaloosa County, sitting without a jury, determined that according to the terms of the policy, Farm Bureau was not obligated to defend or provide coverage to Watson. The trial court based its conclusion upon the findings that the actions of Watson were intentional in nature, with intended or expected results, and that timely notice was not given the insurer, as required by the policy provisions. Watson raises two issues on appeal:
I
 Whether the trial court committed reversible error by finding that the shooting was "expected or intended from the standpoint of the insured."
II
 Whether the trial court committed reversible error by finding that the insured failed to give timely notice as required by the terms of the policy.
 I
The Alabama Farm Bureau homeowner's policy issued to Watson contained the following exclusion: *Page 396 
 "1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to:
 a. bodily injury or property damage which is expected or intended by the insured."
In Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer,454 So.2d 921 (Ala. 1984), this Court considered this same standard form insurance policy exclusion, in an effort to determine whether an insured's shooting of his brother was "expected or intended from the standpoint of the insured." The trial court found that the injury inflicted was not expected or intended, and therefore declared that Alabama Farm Bureau was obligated to defend and provide coverage to the insured's estate in the wrongful death action brought by his brother's widow. Upon review, this court noted that the ore tenus presumption of correctness applies to the trial court's finding:
 "This court has consistently held that the question of whether an injury which the insured inflicts upon another is `expected or intended from the standpoint of the insured' is a question of fact for the jury or judge."
Dyer, 454 So.2d at 924.
In affirming the judgment of the trial court, the Dyer Court enunciated the legal standard to be applied when weighing the facts:
 "We, therefore, hold that a purely subjective standard governs the determination of whether the insured Wayne Dyer either expected or intended to inflict bodily injury upon his brother, William. Under this subjective test, an injury is intended from the standpoint of the insured if the insured possessed the specific intent to cause bodily injury to another, whereas, an injury is `expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act."
Dyer, 454 So.2d at 925.
Applying the pronouncements in Dyer to the case at bar, the record indicates that there was sufficient evidence to support the trial court's findings. The testimony at trial indicates that Watson took a gun with him when he went to see what had happened to his daughter. Watson got out of his car and had the gun with him. He came up to Renfroe's truck and asked, "What ya'll done to Sharon?" and then pulled the gun, pointed it at Renfroe's head, and shot Renfroe.
Although the testimony indicated no prior animosity between the parties, and although Watson testified that he did not mean to shoot Renfroe, nevertheless the trial judge, after hearing all the evidence could have reasonably concluded that when Watson pulled the gun, he either expected or intended that the gun would discharge and injure Renfroe.
Based upon all of the evidence, the trial court could have reasonably concluded that Watson either expected or intended that the gun would discharge and injure Renfroe. The ore tenus presumption of correctness attaches to the trial court's findings on this controverted factual question.
 II
Watson also argues that the trial court erred in its finding that he failed to give Farm Bureau notice of the incident within the time required by the policy.
As it related to notice, the policy provided:
 "3. Duties after loss. In case of an accident or occurrence, the insured shall perform the following duties that apply. He shall cooperate with us in seeing that these duties are performed:
 "a. give written notice to us or our agent as soon as practicable, which sets forth:
"(1) the identity of this policy and insured;
 "(2) reasonably available information on the time, place and circumstances of the accident or occurrence; and *Page 397 
 "(3) names and addresses of any claimants and available witnesses;
 "b. forward to us every notice, demand, summons or other process relating to the accident or occurrence."
The policy in this case required that notice be given to the insurer "as soon as practicable." In Southern GuarantyInsurance Co. v. Thomas, 334 So.2d 879 (Ala. 1976), we noted that the terms "as soon as practicable" and "immediately," as they are used in insurance policies, have been construed to mean that notice must be given "within a reasonable time" in light of the facts and circumstances of a given case. Id. at 882.
In determining whether notice was given "within a reasonable time," this Court in Cherokee Insurance Co. v. Frazier,406 So.2d 881 (Ala. 1981), stated:
 "The two factors to be considered in the determination of reasonableness of delay are length of the delay and the reasons for the delay. Also, where conflicting inferences may reasonably be drawn from the evidence, the question of reasonableness of a delay in giving notice is a question of fact for the factfinder. Conflicting inferences concerning the reasonableness of a delay may sometimes be drawn where the insured offers evidence of mitigating circumstances." Id. at 883 (citations omitted).
According to the evidence in this case, the shooting occurred on June 28, 1980. Watson did not notify Farm Bureau of the incident until October 1983. Watson claims that his three-year delay in giving notice occurred because he was unaware that his policy provided coverage. He asserted that it was not until he contacted an attorney that he realized that his homeowner's insurance might cover this kind of incident.
A similar reason for delay was presented to this court inSouthern Guaranty Insurance Co. v. Thomas, 334 So.2d 879 (Ala. 1976). In that case, we found that this excuse was clearly unreasonable, and noted that since the insured had possession of the policy and ample opportunity to read it, the terms of the policy had been breached. Id. at 884; see also, LibertyMutual Insurance Co. v. Bob Roberts and Co., 357 So.2d 968
(Ala. 1978).
Upon review of the record in this case, we find that the trial court's conclusions were not clearly erroneous or against the great weight of the evidence. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.