This appeal involves an action filed against State Farm Fire and Casualty Company ("State Farm") and Donald R. Steele by the plaintiffs, James R. Reeves, Sr., Myrl Reeves, and James R. Reeves, Jr., for damages based on breach of contract, negligence, and fraud. The plaintiffs appeal from a summary judgment entered in favor of State Farm and Steele. We affirm.
In March 1978, Reeves, Sr., and his wife purchased a State Farm homeowner's insurance policy. Over the years, they made various claims under the policy and on each occasion, within a short period of time, they notified their State Farm agent, Donald Steele, of the occurrence. In October 1981, *Page 254 
Reeves, Jr., 16 years of age and residing with his parents, was involved in an incident wherein he shot and killed another young man named Melvin Price. Murder charges were filed against Reeves, Jr., and in August 1983, he was convicted of criminally negligent homicide and was sentenced to one year in prison. In October 1983, Catherine Price, as administratrix of the estate of Melvin Price, filed a wrongful death action against Reeves, Jr. The complaint was served on him shortly thereafter.
The State Farm homeowner's insurance policy in question provided coverage for injuries an insured may accidentally cause to a third party away from home. The policy included Reeves, Jr., as an additional unnamed insured. The policy also contained the following provision:
 "3. Duties after Loss. In case of an accident or occurrence, the insured shall perform the following duties that apply. You should cooperate with us in seeing that these duties are performed:
 "a. give written notice to us or our agent as soon as practicable, which sets forth:
"(1) the identity of this policy insured;
 "(2) reasonably available information on the time, place and circumstances of the accident or occurrence; and
 "(3) names and addresses of any claimants and available witnesses:
 "b. forward to us every notice, demand, summons, or other process relating to the accident or occurrence;
". . . .
 "6. Suit Against Us. No action shall be brought against us unless there has been compliance with the policy provisions."
It was not until July 15, 1987, that the Reeveses met with their State Farm agent, Steele, to discuss the shooting incident. On that date, five years and nine months after the incident, and nearly four years after the filing of the civil complaint against Reeves, Jr., the Reeveses gave Steele a copy of the civil complaint and made their claim for coverage under their homeowner's policy. State Farm refused to defend Reeves, Jr., in the pending wrongful death action and maintained that it was under no obligation to provide coverage for any judgment that might be rendered against him, because of the Reeveses' delay in notifying State Farm of the shooting incident and in forwarding legal process in relation to the civil suit.
The Reeveses eventually sued State Farm and Steele. Their amended complaint stated causes of action for (1) breach of contract; (2) fraud; and (3) negligence. The defendants denied liability and, after several depositions were taken, they filed motions for summary judgment. The trial court heard evidence in connection with the motions and thereafter granted summary judgment in favor of both defendants on all counts.
The Reeveses contend on appeal that summary judgment was improper as to their breach of contract claim because State Farm had actual notice of the shooting incident soon after it occurred or, in the alternative, that a jury question arose as to whether notice was given to State Farm "as soon as practicable" as required by their homeowner's policy.
The Reeveses initially argue that the notice requirements under the policy were satisfied when Steele read about the shooting incident in the newspaper, realized that the articles concerned one of his insureds, and clipped out the articles to keep on file. Our cases have consistently held, however, that the failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insured to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract. E.g., Watson v. Alabama Farm BureauMut. Cas. Ins. Co., 465 So.2d 394 (Ala. 1985); Pharr v.Continental Casualty Co., 429 So.2d 1018 (Ala. 1983). The fact that the insured's agent in this case learned of the shooting incident through the newspaper does not satisfy the requirement that written notice of the occurrence be given to the insurance company or its agents. In Continental Ins. Co. v. Parkes,142 Ala. 650, 39 So. 204 (1905), a case involving an *Page 255 
action on a fire policy requiring "immediate notice of any loss thereby in writing to the company," the Court held that this condition was not satisfied by the fact that the insurer had actual notice of the loss within 48 hours from sources independent of the insured. Likewise, other courts have more recently concluded that the insured must comply with the notice provisions and cannot rely on information the insurer or its agents may have received from newspapers or other sources. City of Harrisburg v. International Surplus Lines Ins.Co., 596 F. Supp. 954 (M.D.Pa. 1984); Insurance Co. of NorthAmerica v. Waldroup, 462 F. Supp. 161 (M.D.Ga. 1978).
The Reeveses also suggest that State Farm had actual notice of the occurrence in question because of an alleged "policy" of State Farm that required its agent to notify the Company of any occurrences known to the agent that might give rise to a claim from one of its insureds. This argument is also without merit. First, the claims superintendent for State Farm stated in an affidavit submitted by State Farm with its motion for summary judgment that no such policy existed within the Company. But, even assuming that such a policy existed, there is no evidence of any lack of compliance with it. Mr. Steele testified that the newspaper articles did not indicate to him the existence of any "occurrence" within the meaning of the policy or any claim that could be made under the policy. Furthermore, any policy State Farm may have had in this regard would not obviate the requirement that the insured give written notice of the occurrence, its time, place, and circumstances, along with the names and addresses of any claimants or available witnesses.
The Reeveses argue, in the alternative, on their breach of contract claim that whether notice was given to State Farm of the shooting incident "as soon as practicable" as required by their homeowner's policy was for a jury to determine. We do not agree.
The term "as soon as practicable" has been construed many times by this Court to mean that notice must be given within a reasonable time in view of the facts and circumstances of the case. Watson v. Alabama Farm Bureau Mut. Cas. Ins. Co.,465 So.2d 394, 397 (Ala. 1985); United States Fidelity GuarantyCo. v. Bonitz Insulation Co. of America, 424 So.2d 569, 572
(Ala. 1982); Southern Guaranty Ins. Co. v. Thomas,334 So.2d 879, 882 (Ala. 1976). Whether a delay in giving notice is reasonable depends on the length of the delay and the reasons or excuses for the delay. Aetna Ins. Co. v. Spring Lake, Inc.,350 So.2d 397, 400 (Ala. 1977). If the insured offers excuses for the delay and those excuses may reasonably be said to justify the length of the delay in giving notice, then the issue of the reasonableness of the delay is for a jury to determine. Thomas, 334 So.2d at 883. However, there are certain instances in which the excuse offered by the insured to justify the delay are unreasonable as a matter of law and afford no basis for submitting the issue to the jury. 334 So.2d at 884.
The issue of whether the delay was reasonable under the facts in this case is one of law. It is undisputed that the Reeveses did not give notice of the shooting incident to State Farm until five years and nine months after the incident. The Reeveses assert that the reason for the delay is that they were unaware that their homeowner's policy may have provided coverage. A similar reason for delay was presented to this Court in Thomas, supra, and in Watson v. Alabama Farm BureauMut. Cas. Ins. Co., 465 So.2d 394 (Ala. 1985). In both of those cases, we found that this excuse was clearly unreasonable and we noted that because the insured had possession of the policy and ample opportunity to read it (as the Reeveses did in this case), the terms of the policy had been breached.
The Reeveses maintain, however, that American Liberty Ins.Co. v. Soules, 288 Ala. 163, 258 So.2d 872 (1972), is controlling authority for their contention that the delay was not unreasonable. In Soules, we held that a delay of 11 months was not unreasonable on the part of a claimant who was an unnamed additional insured in a *Page 256 
homeowner's policy owned by his parents. Significant to our holding in that case was the fact that the claimant was totally unaware of the existence of the homeowner's policy owned by his parents. This case, however, is distinguishable from Soules in many respects. First, although Reeves, Jr., was an unnamed additional insured under his parent's policy, he was aware that his parents owned a homeowner's insurance policy with State Farm. Second, the delay in Soules was for 11 months and occurred before any suit papers were filed against the additional insured. The delay in this case was for nearly six years, with three years and nine months of that time coming after Reeves, Jr., received the civil complaint. Finally, the reasons for failure to notify the homeowner's insurer in Soules
were particularly compelling under the circumstances of that case. The injuries arose out of an accidental firing of a pistol while the insured and his fiancee were sitting in his parked vehicle. State Farm, the automobile insurer, had been immediately informed of the incident, and the insured had every reason to believe, during that 11-month period, that State Farm would handle the claim. He had signed a document authorizing State Farm to "investigate, negotiate, settle, deny or defend any claim" arising out of the accident. Only later did he learn that State Farm was not covering the claim. In contrast, the Reeveses had no reason to believe any other insurer was handling and defending the wrongful death claim.
We also note that the Reeveses' failure to forward any legal process concerning the shooting incident until nearly four years after the filing of the complaint was a possible breach of a separate and independent obligation of the insured under the terms of the homeowner's policy. The purpose of provisions in insurance policies requiring the insured to forward legal process to the insurer immediately is to afford the insurer an opportunity to control litigation. Watts v. Preferred RiskMut. Ins. Co., 423 So.2d 171 (Ala. 1982). State Farm never had that opportunity in this case. Indeed, the attorneys had even reached a tentative settlement prior to State Farm's being contacted. These facts alone suggest that State Farm should have been released from liability, but since our holding on the notice issue disposes of the breach of contract claim, we need not decide this issue.
The Reeveses' third and fourth counts in their complaint alleged that State Farm, after receiving actual notice of the shooting incident and the resulting litigation, was under a duty to disclose to the Reeveses the existence of coverage under their homeowner's policy and to assist them in making a claim against the policy. They assert that State Farm's failure to disclose this potential coverage and to assist them in making a claim constituted legal fraud, or, in the alternative, negligence.
Code of 1975, § 6-5-102, provides:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
"Under § 6-5-102, mere silence is not fraud unless confidential relations or special circumstances exist; active concealment or misrepresentation must be present." Berkel Co. Contractors v.Providence Hospital, 454 So.2d 496, 505 (Ala. 1984). The Reeveses do not allege, and no evidence exists to indicate, that any misrepresentations were made by State Farm or that it was guilty of any active concealment. Rather, the Reeveses' only contention is that a relationship of trust and confidence existed between the Reeveses and Steele. In support of their theory, they cite State Farm Mut. Auto. Ins. Co. v. Ling,348 So.2d 472 (Ala. 1977). The Ling case, however, is in no way similar to the situation at hand. There is no evidence that the Reeveses were lulled into any sense of security regarding State Farm's handling of the defense of the wrongful death action. In fact, the Reeveses never mentioned the matter to State Farm, nor is there any other evidence to suggest that a *Page 257 
relationship of trust and confidence existed between the Reeveses and their State Farm agent that would have required the agent to notify the Reeves of a possible claim. Having determined that no duty to disclose the existence of potential coverage arose in this case, we conclude that the Reeveses' negligence count is likewise without merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
All the Justices concur.