Joe Nathan Brantley appeals from a summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm") regarding uninsured/underinsured *Page 185 
motorist benefits.[1] The trial court held, as a matter of law, that Brantley's settlement of his claim with Alfa Mutual Insurance Company ("Alfa") without the consent of State Farm was a violation of the "Uninsured Motor Vehicle — Coverage U" provision of the applicable policy. The court, relying on Lowev. Nationwide Insurance Co., 521 So.2d 1309 (Ala. 1988), stated that Brantley's failure to give State Farm notice of his claim impaired State Farm's subrogation rights. We agree.
The facts in this case are essentially undisputed. On November 21, 1985, Brantley and Willie D. Griffin were passengers in a State of Alabama Highway Department vehicle driven by Rodney Taylor. On U.S. Highway 31 in Conecuh County, Alabama, a vehicle driven by Frances Phillipa Brown struck the vehicle driven by Taylor. Griffin and Brantley suffered injuries. Brown was insured by Alfa, and Taylor was insured by State Farm. After the accident occurred, State Farm had an adjuster investigate the circumstances of the accident, in which its policyholder, Taylor, was involved. Brantley did not give a statement to the State Farm adjuster; however, he was present when Taylor gave a statement to the adjuster.
On February 16, 1987, Griffin, in accordance with the provisions of Taylor's policy, notified State Farm of his intent to file an underinsured motorist claim under Taylor's policy with State Farm. On March 10, 1987, he filed a complaint in the Conecuh Circuit Court to recover damages under the uninsured/underinsured motorist provision of that policy.[2]
On June 8, 1987, Brantley sued Brown only, seeking $100,000 in damages for injuries sustained in the accident. On or before January 8, 1988, Brantley agreed to settle with Alfa his claim against Brown; he agreed to settle for $20,000, the limit of liability coverage under Brown's policy with Alfa.
Immediately after the settlement, Brantley attempted to collect against Taylor's policy with State Farm. Along with counsel, Brantley drafted and mailed by certified mail, return receipt requested, a letter dated January 8, 1988, to the local State Farm agent, Max Williams; that letter reads, in pertinent part:
 "The . . . lawsuit filed by Mr. Brantley against a Frances Phillipa Brown, for injuries which he received as a result of an accident on November 11 [sic], 1985, has been settled for policy limits of $20,000.00."
The letter incorrectly referred to the number of a policy that had once belonged to Brantley, rather than Taylor, but that policy had lapsed prior to the November 21, 1985, accident. Williams received the letter on January 12, 1988, the same day Brantley's suit against Brown was dismissed with prejudice. Then, on January 18, 1988, Brantley executed with Brown and Alfa a general release of all claims against them arising out of the November 21, 1985, automobile accident.
After receiving no response from Williams or State Farm, Brantley and counsel, on March 28, 1988, sent a second letter to Williams, advising him that the $20,000 settlement with Brown and Alfa had been paid. Williams also demanded payment from State Farm of the limits of the underinsured motorist provision of Taylor's policy. On this occasion, the letter correctly referred to Taylor's policy number. However, neither Williams nor State Farm responded to the letter.
On November 13, 1989, Brantley sued State Farm for underinsured motorist benefits under Taylor's policy. On October 1, 1990, State Farm filed a motion for summary judgment, alleging that Brantley's failure to give State Farm notice of his uninsured motorist claim before settling his claim with Alfa had impaired its subrogation rights underLowe v. Nationwide Insurance Co., supra, and had violated the *Page 186 
uninsured motor vehicle provision of Taylor's policy. After a hearing on the matter, the trial court ruled in favor of State Farm. Brantley appeals.
Initially, we point out that a summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P. Once the moving party has made a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to provide "substantial evidence" in support of his position. Ala. Code 1975, § 12-21-12; Rule 56, A.R.Civ.P.; Hanners v. BalfourGuthrie, Inc., 564 So.2d 412 (Ala. 1990); Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794 (Ala. 1989). The trial court is required to view all of the evidence offered by the moving party in support of its motion in the light most favorable to the nonmovant. Hanners, supra, and Bass, supra. With this standard in mind, we now address the merits of Brantley's contentions.
Brantley contends that the January 8, 1988, letter mailed to Williams, Taylor's insurance agent, served as adequate notice to State Farm that he, Brantley, was making an underinsured motorist claim under Taylor's policy for $20,000. State Farm does not dispute the fact that it received the certified letter on January 12, 1988, as indicated on the returned receipt.
State Farm contends that Brantley's settlement with Brown and Alfa was final before it even received notice of the settlement or notice of Brantley's claim for underinsured motorist benefits under Taylor's policy. More specifically, State Farm asserts that because Brantley settled his claim with Brown and Alfa before it was notified of his intent to make a claim, State Farm was denied its subrogation rights. Additionally, State Farm asserts that Brantley failed to comply with the terms of Taylor's policy. The provision State Farm relies on for this argument reads:
"When Coverage U Does Not Apply
"THERE IS NO COVERAGE:
 "1. FOR ANY INSURED WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH:
 "a. THE OWNER OR OPERATOR OF AN UNINSURED MOTOR VEHICLE, OR
 "b. ANY PERSON OR ORGANIZATION WHO MAY BE OBLIGATED ON BEHALF OF SUCH OWNER OR OPERATOR
 "AND THEREBY IMPAIRS OUR RIGHT TO RECOVER OUR PAYMENTS."
Recently, in Lambert v. State Farm Mutual Insurance Co.,576 So.2d 160 (Ala. 1991), this Court established procedures to be followed in every case involving the rights of an insured and the underinsured motorist insurance carrier. We are mindful of the fact that each case presents different facts and circumstances and must be treated accordingly; however, the following general rules provide a guideline in analyzing these cases:
 "(1) The insured, or the insured's counsel, should give notice to the underinsured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears the insured's damages may exceed the tort-feasor's limits of liability coverage.
 "(2) If the tort-feasor's liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured's claim against the tort-feasor, and if the settlement would release the tort-feasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.
 "(3) At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor's intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay *Page 187 
underinsured motorist benefits. If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.
 "(4) The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured's claim and to notify its insured of its proposed action.
 "(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tort-feasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tort-feasor's insurer.
 "(6) If the underinsured motorist insurance carrier wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier's insured, advance to its insured an amount equal to the tort-feasor's settlement offer."
576 So.2d at 167. The Lambert Court also made the following suggestion in applying these rules:
 "These general guidelines should be applied with the understanding that the purpose of consent-to-settle clauses in the uninsured/underinsured motorist insurance context is to protect the underinsured motorist insurance carrier's subrogation rights against the tort-feasor, as well as to protect the carrier against the possibility of collusion between its insured and the tort-feasor's liability insurer at the carrier's expense."
576 So.2d at 167.
The rules established in Lambert v. State Farm MutualInsurance Co., supra, are consistent with our earlier declaration in Lowe v. Nationwide Insurance Co., supra, that there are three primary concerns with insurance claims involving underinsured motorist insurance coverage:
 "1) [T]hat of protecting the right of the [underinsured motorist insurance carrier] to know of, and participate in, the suit;
 2) that of protecting the right of the insured to litigate all aspects of his claim in a single suit . . .; and 3) that of protecting the liability phase of the trial from the introduction of extraneous and corrupting influences, namely, evidence of insurance."
521 So.2d at 1309.
Under these guidelines, we make the following observations: On June 8, 1987, Brantley sued Brown and Alfa, seeking $100,000 in damages. Brantley did not notify State Farm of his intent to file a claim under Taylor's policy until January 8, 1988; the January 8 letter was the first indication to State Farm that Brantley was intending to file a claim. That same letter contained the statement that the "lawsuit [between Brantley and Brown] has been settled for policy limits of $20,000.00." This was also the first indication to State Farm that settlement negotiations were taking place. On January 18, 1988, 10 days after the settlement agreement, Brantley executed a general release of all claims against Brown and Alfa arising out of the November 21, 1985, automobile accident. On February 8, 1988, Brantley received the $20,000 settlement. On March 28, 1988, Brantley made a second demand to State Farm for the limits of underinsured motorist coverage under Taylor's policy. When State Farm failed to respond, Brantley sued. The action resulted in a summary judgment in favor of State Farm.
Based on the facts before us, we hold that the trial court correctly entered the summary judgment in favor of State Farm.Lambert v. State Farm Mutual Insurance Co., supra, clearly established that, before any settlement was final, reasonable notice must have been given to State Farm by Brantley of his intent to file a claim for underinsured motorist benefits. Brantley simply did not give State Farm adequate notice of his claim under Taylor's policy for underinsured motorist insurance benefits in *Page 188 
order for State Farm to adequately protect its subrogation rights. State Farm never had the opportunity to even consent to, or refuse to consent to, the settlement agreement between Brantley and Brown and Alfa. State Farm was clearly denied its opportunity to protect its subrogation rights.
Therefore, based on the foregoing, the judgment in favor of State Farm is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and INGRAM, JJ., concur.
[1] As statutorily defined, "uninsured motorist" includes "underinsured motorist." Ala. Code 1975, § 32-7-23(b).
[2] The record does not reveal whether Griffin was successful with his claim for underinsured motorist benefits under Taylor's policy with State Farm or whether he collected any benefits from Brown's insurance policy with Alfa. We point out that under the facts in the instant case, Brantley's claim against State Farm does not rest on the success or failure of Griffin's claim.