74 So.3d 952 (2011)
Lou Ann DOWNEY and Delbert Downey
v.
TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY.
1100272.
Supreme Court of Alabama.
June 30, 2011.
*953 Myron K. Allenstein and Rose Marie Allenstein of Allenstein & Allenstein, LLC, Gadsden, for plaintiffs.
Brenen G. Ely and Susan Haygood McCurry of Ely & Isenberg, LLC, Birmingham, for defendant.
WOODALL, Justice.
The United States District Court for the Northern District of Alabama, Middle Division, has certified to this Court the following question:
"Under Alabama law does the failure of an insured to give prior notice to his *954 or her insurer of a proposed settlement and release of an alleged tortfeasor cause the insured to forfeit underinsured motorist coverage regardless of the insured's actual knowledge of said coverage and regardless of prejudice to the insurer if the insured has possession of the policy which provides the coverage?"
We answer this question in the affirmative.

I. Factual Background
The facts are undisputed. On April 21, 2007, Delbert Downey was operating a motorcycle on which Lou Ann Downey was a passenger. While the Downeys' motorcycle was stopped at an intersection controlled by a traffic light, an automobile operated by Wyndell Thompson approached the intersection from the Downeys' rear. Mrs. Downey was seriously injured when Thompson failed to stop.
At the time of the accident, a number of insurance policies were in force. Thompson had a liability policy issued by First Acceptance Insurance Company, Inc. ("First Acceptance"), in the amount of $10,000. The Downeys had, among others, a Personal Automobile Insurance Policy ("the policy") issued by Travelers Property Casualty Insurance Company ("Travelers"). Each of the Downeys was a named insured on the policy. The policy listed three of the Downeys' vehicles, none of which was the motorcycle.[1] The policy provided uninsured/underinsured-motorist coverage as follows:
"COVERAGE D1 UNINSURED MOTORISTS (BODILY INJURY)
"INSURING AGREEMENT
"A. We will pay damages which an `insured' is legally entitled to recover from the owner or operator of an `uninsured motor vehicle' because of `bodily injury':

"1. Sustained by an `insured'; and
"2. Caused by an `accident.'
"The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the `uninsured motor vehicle.'
"....
"B. `Insured' as used in this coverage means:

"1. You or any `family member.'
"2. Any other person `occupying' `your covered auto.'
"....
"C. `Uninsured motor vehicle' means a land motor vehicle or trailer of any type:
"1. To which no bodily injury liability bond or policy applies at the time of the accident.
"2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of Alabama.
"3. For which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is not enough to pay the full amount the `insured' is legally entitled to recover as damages. In this case the applicable limits for bodily injury liability must be equal to or greater than the minimum limit for bodily injury liability specified by the financial responsibility law of Alabama.

*955 "....
"EXCLUSIONS
"A. We do not provide Uninsured Motorists Coverage for `bodily injury' sustained by any `insured':
"1. If that `insured' or the legal representative settles the `bodily injury' claim without our consent."
(Emphasis added.)
On July 8, 2008, the Downeys, in consideration of $10,000while represented by counsel but without having notified Travelers of the accident and without notifying it that they were doing soexecuted a general release fully discharging Thompson and First Acceptance from all liability arising out of the accident. On August 19, 2009, the Downeys, represented by different counsel, notified Travelers for the first time of the accident and that they were making a claim for underinsured-motorist ("UIM") benefits under the policy. Travelers denied the claim pursuant to Exclusion A.1. of the policy because of the Downeys' failure to obtain its consent to the settlement.
Subsequently, the Downeys sued Travelers in the Etowah Circuit Court alleging breach of contract. Travelers removed the case to the United States District Court for the Northern District of Alabama, Middle Division. Each side moved for a summary judgment. In opposition to Traveler's motion, the Downeys submitted their own affidavits addressing the pre-settlement-notification issue. Specifically, they stated that the reason they "did not notify Travelers of the liability settlement is because [they] did not know [they] had UIM coverage because [they] had no UIM coverage on the motorcycle which was involved in the accident." (Emphasis added.) The federal district court certified to this Court the question regarding the legal effect of the Downeys' alleged ignorance of the scope of the policy's coverage.

II. Discussion
Central to this case is Lambert v. State Farm Mutual Automobile Insurance Co., 576 So.2d 160 (Ala.1991), which defines the respective rights and duties of insureds and their UIM insurers when the tortfeasor's liability insurer offers to settle for its policy limits. Lambert was an action brought by Shelby Lambert and her husband against their own UIM carrier, State Farm Mutual Automobile Insurance Company ("State Farm"), after Shelby Lambert was injured in an automobile accident and State Farm refused to consent to an offer by Alfa Mutual Insurance Company ("Alfa"), the alleged tortfeasor's liability insurer, to settle with the Lamberts for $25,000, the limits of the tortfeasor's policy with Alfa. 576 So.2d at 162. Indeed, State Farm had "informed the Lamberts that if they accepted Alfa's settlement offer without first obtaining State Farm's written consent, as required by their policy, State Farm would refuse to pay any underinsured motorist benefits." Id. In their complaint, the Lamberts asserted "that the policy provisions that required them to obtain State Farm's consent before they could settle with the tortfeasor were unconscionable, violative of public policy, and void." Id.
In lieu of holding that consent-to-settle clauses were unenforceable,[2] this Court set forth a framework "that will guarantee that the insured will receive the benefits of the bargain he has made, but that will, at the same time, protect the [UIM] insurance *956 carrier's subrogation rights against the tort-feasor ... and also protect the carrier against the possibility of collusion between the tort-feasor and his liability insurer," 576 So.2d at 166, stating, in pertinent part:
"[(1)] If the tort-feasor's liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured's claim against the tort-feasor, and if the settlement would release the tort-feasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.
"[(2)] At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor's intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tortfeasor, or will deny any obligation to pay underinsured motorist benefits. If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.
"[(3)] The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured's claim and to notify its insured of its proposed action.
"[(4)] If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tortfeasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tort-feasor's insurer.
"[(5)] If the underinsured motorist insurance carrier wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier's insured, advance to its insured an amount equal to the tort-feasor's settlement offer."
Lambert, 576 So.2d at 167 (emphasis added).
Notwithstanding the Lambert framework, the Downeys contend that "Alabama [case]law recognizes that lack of notice is excusable under certain circumstances." The Downeys' brief, at 3. This argument is unavailing.
"In the typical case, the insured must, at a minimum, put on evidence showing the reason for not complying with the [insurer's] notice requirement. This prerequisite satisfied, the insurer may then demonstrate that it was prejudiced by the insured's failure to give timely notice." State Farm Mut. Auto. Ins. Co. v. Burgess, 474 So.2d 634, 637 (Ala.1985) (emphasis added). If no reason is given, however, a summary judgment for the insurer denying UIM benefits is appropriate. See Ex parte Morgan, 13 So.3d 385 (Ala.2009) (where insured gave no reason for affording the insurer only 10 days' notice of the settlement negotiations, the notice was unreasonable as a matter of law); Overstreet *957 v. Safeway Ins. Co. of Alabama, 740 So.2d 1053 (Ala.1999) (affirming a summary judgment for the insurer denying UIM benefits when the insured offered no excuse for its clandestine settlement with the tortfeasor); Jones v. Allstate Ins. Co., 601 So.2d 989 (Ala.1992) (no reason given); Brantley v. State Farm Mut. Auto. Ins. Co., 586 So.2d 184 (Ala. 1991) (no reason given). Similarly, where a proffered reason is invalid as a matter of law, the noncompliance stands unexcused. See Reeves v. State Farm Fire & Cas. Co., 539 So.2d 252, 255 (Ala. 1989).
The only reason proffered by the Downeys for their noncompliance with the notice requirement regarding settlement of their claim is that they did not know that the policy provided UIM coverage for the bodily injuries suffered by Mrs. Downey while riding the motorcycle. It is well settled, however, that "`uninsured motorist coverage inures to a person, not to a vehicle.'" State Farm Mut. Auto. Ins. Co. v. Jackson, 462 So.2d 346, 353 (Ala.1984) (quoting and adopting opinion of United States Court of Appeals for the Eleventh Circuit). In other words, "uninsured motorist coverage is not dependent on the insured person being injured in connection with a vehicle which is covered by the liability insurer against whom recovery is sought under the uninsured motorist provisions." Id. Indeed, the Downeys do not contend that they misunderstood the meaning of the provision. Thus, it is implicit that they simply did not read their policy.
It is clear, however, that where a named insured not only has possession of the policy but also is represented by counsel, ignorance of policy terms resulting from a failure to read the policy does not, as a matter of law, constitute an acceptable excuse for noncompliance with the notification requirements of the policy. See Southern Guar. Ins. Co. v. Thomas, 334 So.2d 879, 884 (Ala.1976) (where the insured is represented by counsel, excuse of ignorance of policy coverage "is clearly unreasonable and affords no basis for submitting the reasonableness of the delay [in notifying insurer of potential claim] to the jury"). Cf. Watson v. Alabama Farm Bureau Mut. Cas. Ins. Co., 465 So.2d 394, 397 (Ala.1985); Reeves, 539 So.2d at 255 (where the insured has "possession of the policy and ample opportunity to read it," the ignorance-of-coverage excuse is unreasonable as a matter of law). Indeed, the manifest mischief that would ensue from the adoption of a contrary rule is not difficult to imagine.

III. Conclusion
In this case, the Downeys were at all relevant times in possession of the policy, which clearly provided UIM coverage to them for bodily injury caused by the operator of an "uninsured motor vehicle." Not only so, but they were represented by legal counsel when, without prior notice to Travelers, they settled with Thompson and released him from all further liability. The only excuse they offer is that they were ignorant of the coverage the policy provided. That excuse is unreasonable as a matter of law. Consequently, they have not met the threshold of showing any alleged "certain conditions" under which "lack of notice [may be] excusable." In other words, the Downeys have "forfeit[ed]" UIM coverage.
QUESTION ANSWERED.
COBB, C.J., and STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs in the result.
*958 MURDOCK, Justice (concurring in the result).
I concur in the result.
The underinsured-motorist ("UIM") insurance contract at issue in this case, like most such contracts, contains a clause that purports to prevent the insured from settling with an alleged tortfeasor without the consent of the insurance carrier to the proposed settlement. In Lambert v. State Farm Mutual Automobile Insurance Co., 576 So.2d 160 (Ala.1991), in an effort to uphold the purpose of the UIM statute, Ala.Code 1975, § 32-7-23, while simultaneously protecting UIM carriers, this Court placed a judicial overlay on such no-settlement-without-consent provisions. This overlay appears to constitute a complete procedural scheme that includes a recognition that a UIM carrier is entitled to reasonable notice and an opportunity to investigate and respond to any proposed settlement with, and release of, an alleged tortfeasor. I question whether our law places an additional overlay on such contractual provisions based upon the holding in State Farm Mutual Automobile Insurance Co. v. Burgess, 474 So.2d 634 (Ala. 1985).
Burgess was decided in 1985, six years before the adoption in Lambert of the above-referenced procedural scheme. Moreover, Burgess addressed the possibility of an insured's being excused from giving notice of his or her accident; it did not concern the issue whether an insured could ever be excused from giving notice of a proposed settlement.
NOTES
[1] The motorcycle was insured by yet a third insurer that did not provide uninsured/underinsured-motorist coverage.
[2] Lambert thus answers any contention that consent-to-settle clauses violate public policy or the Alabama Motor Vehicle Safety-Responsibility Act, Ala.Code 1975, § 32-7-23 ("the Act"). In other words, operation within the Lambert framework obviates concern over any alleged conflict with the Act.