[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13344
Non-Argument Calendar
_____

D.C. Docket No. 2:10-cv-03180-WMA

SHARP REALTY & MANAGEMENT, LLC,

Plaintiff - Counter Defendant - Appellant,

SHADES PARKWAY, LLC,

Plaintiff,

versus

CAPITOL SPECIALTY INSURANCE CORP.,
SPECIALTY GLOBAL INSURANCE SERVICES, LLC,

Defendants - Appellees,

ALLIED WORLD ASSURANCE COMPANY, INC.,

Defendant - Counter Claimant - Appellee.
_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 4, 2013)

Before HULL, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

Sharp Realty & Management, LLC (SRM) sued Allied World Assurance Company (Allied), which provided SRM with E&O insurance[1] from November 22, 2007 to November 22, 2009, and Capitol Specialty Insurance Corp (Capitol), which provided SRM with E&O insurance from November 22, 2009 to November 22, 2010.  SRM seeks six forms of relief: "1) specific performance; 2) damages for breach of contract; 3) damages for bad faith (negligent failure to investigate); 4) damages for bad faith (intentional refusal to afford coverage); 5) damages for fraud for failure to provide promised insurance coverage; and 6) costs of defense in the underlying action."  The district court granted summary judgment in favor of Allied and Capitol.  This appeal followed.

This case arises from a complicated set of facts and procedural history, fully set out in the district court's Memorandum Opinion.  See Sharp Realty and Mgmt., LLC v. Capitol Specialty Ins. Corp., LLC, No. CV-10-AR-3180-S, 2012 WL 2049817, at *1–9 (N.D. Ala. May 31, 2012).  At the most basic level, this case is an insurance dispute between SRM, which was being sued by several parties for misconduct about its management of Shades Creek Plaza; and its E&O insurance

---

[1] As explained by the district court, "E&O insurance coverage generally refers to coverage for negligent acts, errors or omissions that an insured commits, or is alleged to have committed, in the performance of its covered activities."  Sharp Realty and Mgmt., LLC v. Capitol Specialty Ins. Corp., LLC, No. CV-10-AR-3180-S, 2012 WL 2049817, at *1 (N.D. Ala. May 31, 2012).

providers: Allied, which provided a defense under a full reservation of rights, and Capitol, which denied coverage.

SRM sought four forms of relief based solely on the insurance companies' denial of coverage. These coverage-based claims were for: specific performance, breach of contract, bad faith (negligent failure to investigate), and costs of defense. The other two forms of relief requested by SRM – for bad faith and fraud – were based on a slightly more complicated background. SRM alleged that the only reason its insurance agent, Bates Insurance Agency, obtained E&O coverage from Allied and Capitol was to ensure that it had coverage for claims arising from the management of properties in which an insured owned or had an equity interest. Endorsement Item 8 of the policies defined "Insured Activities" as including management of properties that the insured owned 49% or less of and some claims arising out of the management of majority owned or wholly owned properties. SRM argues that this endorsement bound the insurance companies to provide coverage for "affiliated entities." Therefore, "when the companies denied coverage because of the 'affiliated entities exclusion,'[2] [it] constituted (1) bad faith

---

[2] The "affiliated entities" exclusion, in Part II.B of the policies, states that: "The Company is not liable for Damages or Claim Expenses or obligated to defend Claims made by or on behalf of: 1. Any entity . . . over which an Insured, by reason of ownership interest or otherwise, asserts influence or control." The relationship between Endorsement Item 8 and this exclusion is a point of much contention between the parties.

and (2) fraud in the inducement." We will refer to this second group of claims as the fraud-based claims.[3]

We review de novo the district court's grant of summary judgment. Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment is only appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, all evidence and factual inferences must be viewed in the light most favorable to the non-moving party. Id. Alabama law governs this case. See Sharp Realty and Mgmt, LLC, 2012 WL 2049817, at *14 n.4.

## I. Allied

In its motion for summary judgment, Allied made several arguments about why SRM's claims against it must fail. These arguments included: 1) that SRM forfeited any available coverage by failing to comply with the Allied Policy's notice provision; and 2) that there was no evidence of bad faith or fraud because Allied defended SRM in the underlying litigation.

We turn first to Allied's argument that SRM forfeited any available coverage by failing to comply with the Policy's notice provision. "[T]he failure of an insured to comply within a reasonable time with such conditions precedent in an

---

[3] In its First Amended Complaint, which asserted claims only against Capitol, SRM alleged one Count of "Bad Faith – Intentionally Refusing to Afford Coverage" (which could encompass coverage-based arguments and fraud-based arguments) and one count of fraud. In its Second Amended Complaint, asserting claims against Allied, SRM combined the fraud and bad faith claims based on these allegations into a single count.

insurance policy requiring the insureds to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract."  Reeves v. State Farm Fire & Cas. Co., 539 So. 2d 252, 254 (Ala. 1989).  "Only two factors are to be considered in determining the reasonableness of a delay in giving notice to the insurer: the length of the delay and the reasons for the delay."  Travelers Indem. Co. of Connecticut v. Miller, 86 So. 3d 338, 342 (Ala. 2011).  Prejudice to the insurer is not a factor unless "there is no express provision making the insured's failure to give such notice a ground of forfeiture or a condition precedent."  American Fire & Cas. Co. v. Tankersley, 116 So. 2d 579, 581 (Ala. 1959); see also Miller, 86 So. 3d at 342.

SRM incorrectly argues that prompt notice was not a condition precedent in the Allied Policy and that therefore prejudice is a relevant factor in determining the reasonableness of delay.  The Allied Policy states:

> Part VII CONDITIONS . . .
>    B. WHAT TO DO IF AN INSURED HAS A CLAIM
>        If there is a Claim, or a circumstance or incident likely to result in a Claim, the Insured must promptly do the following:
>        1. Notify the Company in writing . . .
>        2. Send the Company copies of all . . . legal papers received in connection with the Claim or potential Claim; . . .
>    C. LEGAL ACTION AGAINST THE COMPANY . . .
>        2. No action may be brought against the Company unless the Insured has fully complied with all terms and conditions of this Policy.

Even though the term "condition precedent" is not used, these provisions make it clear that SRM was required to promptly notify Allied of any claim before it could bring an action against it. In light of this contract provision, we need not consider whether Allied was prejudiced; we must only look at the length of the delay and the reasons for the delay. See Miller, 86 So.3d at 342.

The length of the delay in this case was unreasonable as a matter of law. Sam Sharp, the 100% owner of SRM, was served with the underlying suit on July 10, 2009. SRM did not notify Allied of the lawsuit until March 16, 2010, more than eight months later. The Alabama Supreme Court has held that even "[a] five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay." Nationwide Mut. Fire. Ins. Co. v. Estate of Files, 10 So. 3d 533, 536 (Ala. 2008).

Neither is there a factual question regarding whether there was a reasonable excuse for the delay. See Reeves, 539 So. 2d at 255 (explaining that if the insured offers an excuse that "may reasonably be said to justify the length of the delay" there is a jury question, but the excuse offered may be unreasonable as a matter of law). The only excuse SRM offers for the delay is that Sam Sharp immediately brought the 75 pages of legal documents that he received on July 10th to his attorney without reading through them. Even if it was reasonable for Sam Sharp to bring the legal documents to SRM's attorney without reviewing them, the

6

attorney's failure to notify Allied in a timely manner is attributable to SRM. Cf. Allstate Ins. Co. v. Beavers, 611 So.2d 348, 349, 353 (Ala. 1992) (holding that the insured waived his right to certain insurance benefits because neither he, nor his attorney, satisfied the notification requirement); Indep. Stave Co., Inc. v. Bell, Richardson and Sparkman, P.A., 678 So.2d 770, 771 (Ala. 1996) (discussing a malpractice suit in which the plaintiff sued its attorneys for "negligently fail[ing] to file timely proof of its claim" thereby causing the plaintiff "to be barred from recovering"); see also Arrowood Indem. Co. v. Macon County Greyhound Park, Inc., 757 F. Supp. 2d 1219, 1228 (M.D. Ala. 2010) ("It is the insured's burden to notify the . . . insurer if necessary, and [the insured] was not entitled to rely solely on the evaluations of defense attorneys and insurance agents."). SRM has not explained why it took the attorney eight months to notify Allied.

Because the length of and reason for the delay were not reasonable, SRM failed to comply with the notice provision. This failure prevents SRM from bringing any action against Allied under the express terms of the Policy and releases Allied from obligations imposed by the Policy, see Reeves, 539 So. 2d at 254. For these reasons, we affirm the district court's grant of Allied's summary judgment motion on SRM's coverage-based claims.

We also affirm the district court's grant of Allied's summary judgment motion as to SRM's fraud-based claims. SRM alleges that Allied charged SRM

premiums on "affiliated entity" properties Allied did not intend to cover.  Allied did initially deny coverage based on the "affiliated entities" exclusion, Exclusion II.B.  However, shortly after receiving a letter from Charles Sharp, on behalf of Sam Sharp and SRM, Allied decided to provide SRM with a defense under the terms of the Policy, albeit under a full reservation of rights.  In any event, Allied's summary judgment motion did not argue that Exclusion II.B. barred coverage.  Because SRM offered no other evidence to suggest that Allied did not intend to cover these properties, we are simply left with no evidence suggesting that Allied charged SRM premiums on properties it never intended to cover.

Our ruling in favor of Allied on these grounds renders it unnecessary for us to address the other grounds on which Allied argues for summary judgment or any of the other arguments raised on the Allied appeal.

## II.    Capitol

In its motion for summary judgment, Capitol made several arguments about why SRM's claims against it must fail.  One of these arguments was that SRM's coverage-based claims fail because the underlying claim against SRM was not made within the time frame for coverage under the Capitol Policy.  A second argument was that SRM's fraud-based claims fail because SRM offered no evidence that Capitol committed a fraudulent act that SRM reasonably relied on or any proof that Capitol never intended to perform under the insurance contract.

8

We turn first to Capitol's argument that SRM's coverage based claims must fail because SRM's underlying claim was not made within the period of coverage. "Under Alabama law the general rule is that the insured bears the burden of proving coverage." Jordan v. Nat'l Acc. Ins. Underwriters Inc., 922 F.2d 732, 735 (11th Cir. 1991).

The Capitol Policy only covered "[c]laims first made against an Insured during the Policy Period." Under the Policy, a Claim was considered to be "first made against an Insured when a written Claim is first received by an Insured during the Policy Period." The Policy Period was November 22, 2009 to November 22, 2010.

The Policy included some specific rules for determining when a Claim was first made against an Insured. Specifically, Part V.B of the policy explains:

> Part V WHERE AND WHEN COVERAGE APPLIES . . .
>    B. WHEN . . .
>       5. Multiple Claims
>          All Claims arising from the same Erroneous Act will be considered to have been made on the earlier of the following times:
>          a. The date the first of those Claims is made against an Insured; or
>          b. The date the Company first receives an Insured's written notice of the Erroneous Act. . . .
>       6. Related Erroneous Acts
>          All Erroneous Acts that:
>          a. are committed after the Retroactive Date [November 22, 2004] and before the Expiration Date of the last Miscellaneous E&O Policy issued to an Insured by [Capitol] . . .; and

> b.  are logically or causally connected by common facts, circumstances, transactions, events and/or decisions;
>
> will be:
>
> a.  treated under this Policy as one <u>Erroneous Act</u> . . ..

Thus, all claims arising out of "logically or causally connected" Erroneous Acts committed between November 22, 2004 and November 22, 2010 were considered to have been first made on the date the first of those claims was made against the Insured.

Applying this framework, there were not any claims made against SRM during the Capitol Policy Period of November 22, 2009 to November 22, 2010. On July 10, 2009, Sam Sharp was served with claims based on the results of an audit conducted by Wray Pearce, a forensic accountant. In a letter, Pearce concluded that SRM "has not collected rent or common area maintenance charges appropriately." Based on the period from 2006 through April 2009, SRM owed $218,893 in rent and common area maintenance fees. These claims were made against SRM prior to the Capitol Policy Period because they were first received by the Insured on July 10, 2009 and (again) the Policy Period did not begin until November 22, 2009. They were therefore not covered by Capitol.

Pearce conducted a second audit based on documents produced during discovery. In a letter, which was provided to SRM's counsel on June 3, 2010, Pearce concluded that SRM "has not collected rent or common area maintenance charges in accordance with the leases." This second audit covered years 2000 to

2009.  Based on this audit, the claim against SRM in the underlying suit was increased to $752,846.43.  SRM argues that the claims based on the second Pearce letter are covered by the Capitol Policy because SRM first received written notice of these claims during the Capitol Policy Period.  Capitol argues that because of Part V of the Policy's "Multiple Claims" and "Related Erroneous Act" provisions, all of these claims are considered to have been made on July 10, 2009, which is outside the Policy Period.

We conclude that Capitol's construction is correct.  All of the claims in the underlying action are based on related Erroneous Acts.  The same claimant sued the same defendant for the same type of wrongdoing (failure to collect rent and maintenance fees) at the same location over an overlapping period of time.  Both audits examined whether SRM was collecting rent and fees from the same tenants in accordance with the same leases.  Thus, while there may be separate occurrences, those occurrences are clearly related because they are "logically or causally connected by common facts, circumstances, transactions, events and/or decisions."[4]  Cf. HR Acquisition I Corp. v. Twin City Fire Ins. Co., 547 F.3d 1309, 1316 (11th Cir. 2008) (determining that two lawsuits were "related" under an

---

[4] SRM argues that there is at least a factual question for the jury on this issue.  It points to the fact that Sam Sharp stated in his affidavit that "[a]ll of the alleged acts are unrelated" because Pearce criticized the collection of rents from different tenants who had different leases and the fact that Pearce never stated that the acts were related.  However, these arguments do nothing to break the logical connection between the first set of claims and the second, each of which criticized SRM's collection of rents from the same assortment of tenants.

insurance policy exclusion because they "allege[d] the same type of wrongdoing by [the defendant]").

Under the Capitol Policy, these related Erroneous Acts are treated as a single Erroneous Act. All claims arising out of this Erroneous Act will be considered to have been made on the date the first claim was made against SRM, July 10, 2009. Therefore, the claims were outside of the Policy Period and not covered by Capitol. Because the Capitol Policy did not cover these claims, summary judgment in favor of Capitol was proper as to SRM's coverage-based claims: specific performance, breach of contract, bad faith (failure to investigate), bad faith (intentionally refusing to afford coverage) and costs of defense in the underlying action.

We also affirm the district court's grant of Capitol's summary judgment motion as to SRM's fraud-based claims. "The elements of fraud are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation." Exxon Mobil Corp. v. Alabama Dept. of Conservation and Natural Resources, 986 So. 2d 1093, 1114 (Ala. 2007) (quotation marks and emphasis omitted). SRM's claim is essentially a claim of promissory fraud because SRM alleges that SRM paid Capitol for its promise to cover "affiliated entity" properties and Capitol "had no intention of affording coverage." See Ex Parte Michelin North America, Inc., 795 So.2d 674, 678 – 79 (Ala. 2001) (defining

promissory fraud as being "based upon a promise to act or not to act in the future" and providing an example). There are two additional elements for promissory fraud claims: (1) "proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised," and (2) "proof that the defendant had an intent to deceive." Id. (quotation marks omitted).

No matter what the relationship is between Exception II.B and Endorsement Item 8 and whether "affiliated entity" properties were actually covered under the Policy, SRM has not offered any evidence that Capitol made a false representation, or otherwise acted in bad faith.[5] Though SRM states that "[t]he purpose of changing carriers was to get coverage for 'affiliated entities,'" SRM does not allege any facts suggesting this purpose was made known to Capitol or that Capitol represented to SRM that the affiliated entities would be covered. SRM alleges that "Gresham [& Associates] induced Bates who induced SRM." However, SRM hired Bates to procure E&O coverage for it and Gresham is an insurance broker contacted by Bates. Thus, any representations made by Bates or Gresham cannot be imputed to Capitol. See Carolina Cas. Ins. Co. v. Miss Deanna's Child Care-Med Net, LLC, 869 So. 2d 1169, 1174 (Ala. Civ. App. 2003) (explaining that unless special circumstances are present, an insurance broker is considered to be

---

[5] SRM likely had a similar problem with respect to its fraud-based claims against Allied on this ground. However, we were able to grant Allied's summary judgment motion regarding those claims on other grounds.

exclusively the insured's agent).  There is no evidence that Capitol did anything except process application forms and issue the E&O policy.

Our ruling affirming summary judgment in favor of Capitol on these grounds defeats all of SRM's claims, therefore we will not address the other bases upon which Capitol argued for summary judgment or any of the other arguments raised on appeal.

### III.    **Conclusion**

For these reasons, we affirm the district court's grant of summary judgment in favor of Allied and Capitol.


**AFFIRMED**